**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1746, A16A1755. ATLANTIC GEOSCIENCE, INC. v. PHOENIX DEVELOPMENT AND LAND INVESTMENT, LLC; and vice versa.

McFADDEN, Presiding Judge.

These appeals arise from a professional negligence action. Phoenix Development and Land Investment, LLC ("Phoenix") hired Atlantic Geoscience, Inc. ("Atlantic") to perform an environmental study of land Phoenix wanted to purchase and develop. Atlantic reported that a portion of that land was a "soil/stone storage area." But, after purchasing the land, Phoenix was told that that portion of it was a landfill. The trial court granted summary judgment to Atlantic.

In Case No. A16A1746, Atlantic appeals from the trial court's order denying Atlantic's motion to dismiss Phoenix's appeal from the grant of summary judgment, but we find that the trial court did not abuse his discretion, and we affirm that ruling.

In Case No. A16A1755, Phoenix appeals from the trial court's order granting summary judgment to Atlantic. We reverse, because there is a genuine issue of material fact as to whether Atlantic's alleged negligent misrepresentation in its environmental study proximately caused pecuniary loss to Phoenix in the form of Phoenix's pre-development expenditures made in reliance on the misrepresentation.

*Case No. A16A1746.*

1. *Denial of Atlantic's motion to dismiss appeal.*

Atlantic moved to dismiss Phoenix's appeal from the grant of summary judgment on the ground that, although Phoenix had requested that transcripts be included in the record on appeal, it did not order the transcripts of two summary judgment hearings for more than 246 days after filing its notice of appeal. See OCGA § 5-6-48 (c) (authorizing trial court to dismiss an appeal, among other reasons, "where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party"); see also *Postell v. Alfa Ins. Corp.*, 332 Ga. App. 22, 25 (2) (772 SE2d 793) (2015). The trial court denied the motion, finding that "dismissal of the appeal [was] not warranted under the circumstances" and noting that the hearing transcripts could not have been "prepared with any greater alacrity" due to the health of the court reporter. At the

2

hearing on the motion, the trial court noted on the record, and the parties did not dispute, that the court reporter had significant health problems during the time period in question that affected his ability to work. See generally OCGA § 24-2-201 (a) & (b) (1) (permitting trial court, sua sponte, to take judicial notice of adjudicative fact, not subject to reasonable dispute, that is generally known within the trial court's territorial jurisdiction). The trial court had broad discretion in ruling on the motion to dismiss the appeal. *Propst v. Morgan*, 288 Ga. 862, 863 (708 SE2d 291) (2011). We do not condone Phoenix's delay in ordering transcripts. But we defer to the trial court's decision — in the exercise of his broad discretion and in light of the unusual circumstance of this case in which the court reporter had limited ability to prepare the transcripts — to deny the motion.

*Case No. A16A1755.*

2. *Grant of Atlantic's motion for summary judgment.*

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). This [c]ourt applies a de novo standard of review to an appeal from the grant of summary judgment and we view the evidence in the light most favorable to the nonmovant." *Davis v. Overall*, 301 Ga. App. 4, 5 (686 SE2d 839) (2009) (citation omitted).

3

The parties dispute much of the evidence, and Atlantic argues that we should apply the rule articulated in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), to construe the arguably contradictory testimony of Phoenix's manager against Phoenix, even though Phoenix is the nonmovant. We decline to do so, because Phoenix's manager is not a party to this case and the excerpts of his testimony included in the record before us do not reflect that he gave the testimony as Phoenix's representative under OCGA § 9-11-30 (b) (6). The *Prophecy* rule does not apply to the testimony of a non-party witness. *Thompson v. Ezor*, 272 Ga. 849, 851 (2) (536 SE2d 749) (2000).

Viewed in the light most favorable to Phoenix as the nonmovant, the evidence showed that in early 2008, Phoenix hired Atlantic to conduct a "Phase 1 Environmental Assessment" — a "field and paper study" which does not involve physical sampling of soil or water — of approximately 45 acres of real property ("the property") that Phoenix proposed to buy and develop into a residential community. As part of its work, Atlantic issued a written report. It reported that an adjacent landowner had encroached on and was using a small portion of the property as a "soil/stone storage yard." Atlantic also wrote that it did not recommend an additional environmental investigation.

4

Relying in part on Atlantic's environmental study, Phoenix bought the property on February 29, 2008, and began pre-development work on it. The following year, Phoenix's manager participated in forming a partnership to invest in and further the development of the property. That partnership — South Milledge Investment Group ("SMIG") — entered into an agreement with Phoenix under which SMIG would purchase the property from Phoenix and pay Phoenix fees for developing and managing the property. In accordance with that agreement, Phoenix conveyed the property to SMIG by a deed dated October 1, 2009.

Meanwhile, Phoenix had been in discussions about the encroachment with the adjacent landowner. In a September 8, 2009 letter to Phoenix, the adjacent landowner referred to the encroachment as a "landfill." This was Phoenix's first indication that the encroachment was a landfill. Concerned, Phoenix and SMIG began exploring ways to develop the property that took this information into account. Ultimately, however, SMIG's principals determined that, due to the landfill, the property could not be developed as planned because it was not economically viable.

The bank that financed Phoenix's 2008 purchase of the property closed in early 2010. In November 2010, after Phoenix unsuccessfully sought to extend or restructure the loan encumbering the property with the successor bank, that bank

5

instituted foreclosure proceedings. At that point, SMIG conveyed the property back to Phoenix, which then filed for bankruptcy in an effort to protect the property from foreclosure. In June 2011, SMIG dissolved. Phoenix continued, unsuccessfully, to search for other investors to develop the property. Ultimately the successor bank foreclosed on the property.

In its complaint, Phoenix alleged that Atlantic was professionally negligent for failing to disclose the existence of the landfill and argued that it suffered damages that were directly and proximately caused by this negligence. The crux of Phoenix's theory of damages was that the "late" discovery that the property contained a landfill caused the failure of its development plans with SMIG, and it presented evidence of the amount of money that it would have received from SMIG pursuant to those parties' agreement had the development proceeded as they intended. Phoenix also presented evidence that it had incurred pre-development costs. Phoenix expressly did not seek to recover any diminution in the property's value.

Atlantic argued that it was entitled to summary judgment on grounds of proximate causation and the recoverability of Phoenix's claimed damages. The trial court agreed and granted the motion, finding that Phoenix's claimed damages were not recoverable under the economic loss rule and, alternatively, that there was no

evidence showing its damages were proximately caused by Atlantic's alleged negligence. We disagree.

The economic loss rule does not bar Phoenix from seeking pecuniary damages in this case. That rule "generally provides that a contracting party who suffers purely economic losses must seek [its] remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Centers*, 279 Ga. 77, 78 (1) (608 SE2d 636) (2005) (footnote omitted). But this case concerns an alleged negligent misrepresentation, albeit a misrepresentation made by a professional in the alleged breach of its professional responsibilities. The essence of Phoenix's professional negligence claim against Atlantic is that, in breach of its professional responsibilities, Atlantic communicated incorrect information to Phoenix — that it made a misrepresentation. Phoenix has asserted that, during the course of Atlantic's work on the environmental study, Atlantic negligently supplied Phoenix with incorrect information about the nature of the encroachment on the property and that, in reliance on that information, Phoenix purchased the property and was harmed.

Georgia permits the recovery of certain types of economic losses in an action, such as this, where the plaintiff alleges professional negligence resulting in a misrepresentation. See *BDO Seidman, LLP v. Mindis Acquisition Corp.*, 276 Ga. 311,

311-312 (1) (578 SE2d 400) (2003). Georgia has adopted the rule, enunciated in Restatement (Second) of Torts § 552, that

> one who supplied information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used.

*Badische Corp. v. Caylor*, 257 Ga. 131, 132-133 (356 SE2d 198) (1987) (emphasis omitted). This rule can apply to claims for professional malpractice in cases asserting that a professional made a misrepresentation in the breach of his or her professional duties. See *Badische Corp.*, supra at 132-133 (describing the rule enunciated in Restatement (Second) of Torts § 552 to concern scope of professional liability for negligence in supplying erroneous information). Such a claim would, of course, remain subject to the expert affidavit requirement of OCGA § 9-11-9.1. See generally *Raley v. Terminix Intl. Co.*, 215 Ga. App. 324, 325 (450 SE2d 343) (1994) (holding that OCGA § 9-11-9.1 applies to any case in which a plaintiff alleges that a defendant-professional rendered negligent professional services). This rule also can apply to a claim brought by a plaintiff in contractual privity with a defendant. See

8

*Levine v. SunTrust Robinson Humphrey*, 321 Ga. App. 268, 279-280 (6) (a) (740 SE2d 672) (2013); see also *Badische Corp.*, supra, 257 Ga. at 133 (holding that liability for professional's negligent misrepresentation extends to persons for whom information was directly intended, among others).

A claim based on the rule enunciated in Restatement (Second) of Torts §552 falls within the misrepresentation exception to the economic loss rule. See *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 148 (4) (524 SE2d 790) (1999). Under this rule, Phoenix may seek to recover those damages

> necessary to compensate [it] for the pecuniary loss to [it] of which the misrepresentation is a legal cause, including (a) The difference between the value of what [Phoenix] has received in the transaction and its purchase price or other value given for it; and (b) Pecuniary loss suffered otherwise as a consequence of [its] reliance upon the representation.

*BDO Seidman*, supra, 276 Ga. at 311-312 (1) (quoting Restatement (Second) of Torts § 552B). Because established Georgia law permits the recovery of certain economic damages for this particular type of professional malpractice claim, we need not consider the application of the economic loss rule to other types of professional malpractice claims.

It is true that Georgia law does not allow the bulk of the damages Phoenix has sought. Phoenix must prove actual economic loss proximatly resulting from Atlantic's alleged misrepresentations. *Legacy Academy v. Doles-Smith Enterprises*, 337 Ga. App. 575, 578 (1) (789 SE2d 194) (2016). Our Supreme Court has explained that this type of loss is measured by an "out-of-pocket" standard, not a "benefit-of-the-bargain" standard. *BDO Seidman*, supra, 276 Ga. at 312-313 (1). Consequently, Phoenix cannot measure its damages by the benefit of the bargain that it hoped to achieve when it bought the property in reliance on the representations made by Atlantic in connection with the environmental study. The evidence of the benefits Phoenix would have attained under its agreement with SMIG does not demonstrate Phoenix's "out-of-pocket" losses.

Nevertheless, the record does contain some evidence that, viewed most favorably to Phoenix, shows that Phoenix made pre-development expenditures on the property in reliance on the information it received from Atlantic, and at a hearing on the summary judgment motion Phoenix argued that these expenditures were an element of its damages. Given the posture of this case we must treat Phoenix's summary judgment "papers . . . with considerable indulgence." *Koules v. SP5 Atlantic Retail Ventures, LLC*, 330 Ga. App. 282, 288 (3) n. 10 (767 SE2d 40) (2014) (citation

10

omitted). Doing so, we conclude that Phoenix has pointed to some evidence of "[p]ecuniary loss suffered otherwise as a consequence of [its] reliance upon the representation," *BDO Seidman*, supra, 276 Ga. at 311-312 (1), and consequently Atlantic is not entitled to summary judgment.

*Judgment affirmed in Case No. A16A1746. Judgment reversed in Case No. A16A1755. McMillian, J., concurs. Miller, P. J., concurs in the judgment only.*