A09A0524, A09A0525, A09A0526. McKESSON CORPORATION
et al. v. GREEN et al. (three cases).
A09A0527, A09A0528, A09A0529. GILBERTSON v. GREEN
et al. (three cases).
A09A0530. GILBERTSON v. HALL FAMILY INVESTMENTS,
L.P. et al.

(683 SE2d 336)

PHIPPS, Judge.

These companion appeals arise from two actions brought by shareholders of a company seeking to recover their losses in connection with a sharp decline in the price of the company's stock. Alleging various theories of recovery, the shareholders sued corporate entities and former officers; and the defendants responded with numerous motions, including motions for summary judgment. Because the shareholders failed to demonstrate essential elements of their fraud and civil conspiracy claims, the trial court erred in denying summary judgment on those claims. One of the individual plaintiffs sought indemnification from his former employer; having not been substantively challenged, that claim survives. The other contentions raised herein are moot.

### Underlying Facts

In October 1998, publicly traded companies McKesson Corporation and HBO & Company (HBOC) announced their plans to merge in the first quarter of 1999, with each HBOC shareholder to receive 0.37 share of McKesson common stock for each share of HBOC stock. The merger required approval of shareholders of both companies, and in November 1998, the companies solicited their shareholders' votes through a "joint proxy statement/prospectus" (hereinafter, "joint prospectus").

The proposed merger was approved, and on January 12, 1999, HBOC became a wholly-owned subsidiary of McKesson Corporation, which was renamed McKesson HBOC, Inc. Former HBOC shareholders, including the plaintiffs in the instant litigation, received shares of McKesson HBOC stock in exchange for their shares of HBOC

stock, in accordance with the negotiated exchange ratio.

But within months, on April 28, 1999, McKesson HBOC publicly announced its recent discovery that HBOC had improperly recognized revenue on certain transactions, thereby overstating profits. McKesson HBOC stated it would consequently revise downward its consolidated revenues and earnings. The market reacted. Whereas McKesson HBOC stock had traded at $65.75 at the close of the day before the announcement, the stock price dropped to $34.50 by the close of the trading day of the announcement. With subsequent disclosures by McKesson HBOC of additional instances of improper revenue recognition concerning HBOC, the McKesson HBOC stock price declined further. Numerous lawsuits ensued,[1] including the ones underlying these companion appeals.

### Procedural Posture

The plaintiffs in the two underlying cases are three former HBOC shareholders who voted for the merger and exchanged their HBOC shares for McKesson HBOC shares: (1) Holcombe T. Green, who was chairman of HBOC's Board of Directors from 1989 until February 1998 and who served as HBOC's CEO in 1990 and 1991; (2) HTG Corp., a privately-held company that invested in stock; and (3) Hall Family Investments, L.P., Green's wife's family investment partnership.[2] The defendants are McKesson Corporation;[3] McKesson Information Solutions LLC (hereinafter, "HBOC");[4] Jay Gilbertson, who had served as the chief financial officer and a co-president of HBOC; and Albert Bergonzi, who had served as a co-president and co-chief operating officer of HBOC.

In their cases, filed as renewal actions in state court in April 2006, the plaintiffs alleged common law fraud against the defendants. They claimed that Gilbertson, Bergonzi, and other HBOC officers and employees had engaged in improper and illegal practices starting in 1998 that had led to HBOC's improperly recognizing revenue on certain transactions; that misrepresentations concerning and relating to HBOC's financial information in the joint prospectus

---

[1] See, e.g., *McKesson Corp. v. Green*, 279 Ga. 95, 97-98 (2) (610 SE2d 54) (2005) (concerning McKesson Corporation's claim for unjust enrichment against former HBOC shareholders), citing as its related case *McKesson HBOC v. New York State &c. Fund*, 339 F3d 1087 (9th Cir. 2003); *In re McKesson HBOC, Inc. Securities Litigation*, 126 FSupp.2d 1248 (N.D. Cal. 2000) (securities class action lawsuit stemming from dramatic decrease in trading price of McKesson HBOC stock).

[2] Hall Family Investments, L.P. was the sole complainant in one of the cases, and the other two shareholders were the complainants in the other case.

[3] Formerly known as McKesson HBOC, formerly known as McKesson Corporation.

[4] Formerly known as McKesson Information Solutions, Inc., formerly known as HBO & Company.

had induced them to exchange their HBOC shares for McKesson HBOC shares; that because HBOC's stock price had been artificially inflated, the value of the McKesson HBOC shares they received as a result of the merger was also inflated; and that they consequently did not get the benefit of the bargain of the merger. The plaintiffs also pursued a theory of civil conspiracy against Gilbertson, and Green alleged a claim of indemnification against HBOC.

The defendants attacked plaintiffs' claims by various motions, and the denials of certain of those motions form the bases of these interlocutory appeals. We consider first Case No. A09A0525, as that case is dispositive of issues in the remaining cases.

## Case No. A09A0525

In this case, McKesson Corporation and HBOC (hereinafter, collectively, the "McKesson Defendants") contend that the trial court erred by denying their motion for summary judgment, arguing that the plaintiffs failed to show essential elements of a claim for common law fraud. The plaintiffs maintain that misrepresentations in the joint prospectus in connection with HBOC's financial information induced them into exchanging their shares, rather than selling them for cash; that the value of the McKesson HBOC shares they received in the merger was artificially inflated; and that they therefore did not get the benefit of the bargain in the merger.

To succeed on a claim of fraud, a plaintiff must show that

the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.[5]

1. The McKesson Defendants contend that the plaintiffs failed to establish, among other elements, materiality and causation. They argue that the misrepresentations upon which the plaintiffs allegedly relied in electing to exchange their HBOC shares for McKesson HBOC shares were not material to that investment decision because, even if the plaintiffs had received accurate information, they would have made the same investment decision. The McKesson Defendants

---

[5] *Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977); see *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647-648 (2) (629 SE2d 468) (2006).

further argue that the plaintiffs were not defrauded by *the merger*; that the reason that McKesson HBOC shares were artificially inflated was not because of *the merger*, but because the HBOC shares the plaintiffs and other HBOC shareholders owned were already artificially inflated; that the plaintiffs were not put in a worse position by *the merger*; and that the plaintiffs therefore sustained no actual loss as a result of *the merger*.

Regarding materiality, the plaintiffs rely on the general rule that a fact is material if its existence or nonexistence is a matter to which a reasonable man would attach importance in determining his choice or action in the transaction in question.[6] They identify the purchase of McKesson HBOC shares in the merger as the "transaction in question," and they assert that in deciding to exchange their HBOC shares for McKesson HBOC shares, they "read and attached great importance" to the joint prospectus.

We agree with the McKesson Defendants, however, that in determining materiality, the question is not whether the information relied upon was "important" in some abstract sense; the question must be determined within the context of a specific decision.[7] And "[i]n the context of a share exchange, an omitted or misstated fact 'is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.' "[8]

Contending that the plaintiffs' fraud claim is not viable upon application of this principle, the McKesson Defendants cite *In re McKesson HBOC, Inc. Securities Litigation*,[9] a class action lawsuit that also stemmed from the dramatic decrease in the trading price of the McKesson HBOC stock.[10] In that case, former HBOC shareholders claimed to have relied on misrepresentations in a registration statement filed by McKesson, which misrepresentations included HBOC's false financial statements,[11] in deciding to vote for the merger and exchange their HBOC shares for McKesson HBOC shares.[12] After determining that the relevant inquiry regarding materiality was "how HBOC shareholders would have voted if armed

---

[6] *Floyd v. Morgan*, 62 Ga. App. 711, 716 (5) (9 SE2d 717) (1940).

[7] Id. ("importance" concerns determination of "choice or action in the transaction in question").

[8] *In re McKesson Securities Litigation*, supra at 1259, quoting *TSC Indus. v. Northway, Inc.*, 426 U. S. 438, 449 (96 SC 2126, 48 LE2d 757) (1976) (concerning an alleged violation of the Securities and Exchange Act of 1934 and rules promulgated under the Act in regard to proxy statements).

[9] Supra.

[10] Id. at 1252.

[11] Id. at 1253.

[12] Id. at 1258. Claims were brought against McKesson and others under Section 11 of the Securities Act of 1933.

with the true facts,"[13] the court reasoned:

> If the true facts [had been] disclosed prior to the merger, the market presumably would have acted rationally and discounted the shares to correct the previous inflation. At that point, HBOC shareholders could have sold their shares into a depressed market, or they could have approved the merger, which because of its fixed exchange ratio, would only be more favorable with each drop in HBOC's trading price. There is simply not a substantial likelihood that a reasonable investor would have difficulty deciding which course of action to take. The misstatements were therefore immaterial. . . . While indisputably "important" financial information, the true facts about HBOC's finances would not have made a reasonable HBOC shareholder less likely to approve the merger. . . . [D]isclosure of the true facts would have substantially depreciated the value of HBOC's shares and have been an inducement to the shareholders to elect to accept the terms of the merger.[14]

The court concluded that, as a matter of law, the misstatements in the registration statement were not material and therefore dismissed counts based upon them for failure to state a claim.[15] The court espoused:

> To hold otherwise would allow HBOC shareholders to state a claim for McKesson's failure to tell HBOC shareholders that their own shares of HBOC were inflated due to accounting fraud. Put even less sympathetically, such a lawsuit would be premised in McKesson's failure to tell the HBOC shareholders that they were getting too good a deal in the merger.[16]

We agree with the McKesson Defendants that had the plaintiffs known the true facts about HBOC's financial situation, the only reasonable course for them would have been to do exactly as they did: exchange their artificially inflated HBOC shares, that is, proceed with the merger. Thus, we also agree with the McKesson Defendants that the plaintiffs have failed to causally link their reliance upon the misrepresentations in the joint prospectus with their losses. Because

---

[13] Id. at 1261, n. 2.
[14] Id. at 1261 (citations and punctuation omitted).
[15] Id.
[16] Id.

the cited misrepresentations were not material to the plaintiffs' decision to exchange their shares and any reliance upon them did not cause the plaintiffs' losses,[17] the trial court erred by denying the motion for summary judgment on the common law fraud claims.[18]

2. The McKesson Defendants' remaining contentions in this case, arguing that the plaintiffs cannot demonstrate other elements of their fraud claims, are moot.[19]

The judgment in Case No. A09A0525 is reversed.

## Case No. A09A0524

In this case, the McKesson Defendants appeal from two orders, one denying their motion to dismiss the plaintiffs' fraud claims as time-barred, and the other denying their motion to dismiss the entire complaint filed by Green and HTG as time-barred.

3. The McKesson Defendants contend that the trial court erred by allowing the plaintiffs to pursue their common law fraud claims, filed under the renewal statute,[20] accusing the plaintiffs of impermissibly using that statute to switch to a different fraud theory. The McKesson Defendants assert that the plaintiffs' theory of fraud at issue here was alleged for the first time in their 2006 state court complaints and is consequently time-barred under OCGA § 9-3-31.[21] We have determined, however, that the plaintiffs failed to establish essential elements of their fraud claims.[22] Thus, the McKesson Defendants' appeal in Case No. A09A0524 of the trial court's order denying the motion to dismiss the fraud claims as time-barred is dismissed as moot.

4. The McKesson Defendants contend that the trial court erred

---

[17] See id.; see also In re AOL Time Warner, Inc. Securities Litigation, 503 FSupp.2d 666, 672-674 (S.D. N.Y. 2007) (alleged misstatements or omissions prior to the merger cannot be material if their correction or disclosure would only redouble premerger shareholders' resolve to enter into the proposed transaction); Minzer v. Keegan, 218 F3d 144, 149 (2d Cir. 2000) (where allegedly material omissions in the proxy statement would not have induced any reasonable investor to be less likely to approve the objected-to merger, there was no causal link between the omission and any harm resulting from approval of the merger).

[18] See Parrish, supra at 648 (2) (as moving party on summary judgment motion, a defendant may pierce plaintiff's pleadings by demonstrating that there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case).

[19] See Asuamah v. Haley, 293 Ga. App. 112, 114 (1) (666 SE2d 426) (2008) (because defendant need eliminate only one essential element of claim to prevail at summary judgment, court need not address other issues raised in the motion for summary judgment).

[20] OCGA § 9-2-61 (a). The plaintiffs dismissed their prior superior court actions after the superior court granted a motion to exclude the testimony of their damages expert and they were facing trial with no damages expert. See McKesson Corp. v. Green, 286 Ga. App. 110, 111 (648 SE2d 457) (2007).

[21] See Willis v. City of Atlanta, 265 Ga. App. 640, 643 (2) (595 SE2d 339) (2004) (four-year statute of limitation governs actions for fraud), citing OCGA § 9-3-31.

[22] See Division 1, supra.

by denying their motion to dismiss Green and HTG's complaint as time-barred. Their argument is as follows: the original complaint filed in state court by Green and HTG sought a declaratory judgment; because state courts lack subject matter jurisdiction to grant declaratory judgments,[23] such complaint was a nullity; Green and HTG did not amend their complaint to dismiss the declaratory judgment claim within six months of the voluntary dismissal in superior court; consequently, the entire complaint is barred "based on the statute of limitations."

The original complaint filed in state court by Green and HTG contained an allegation:

> Green is entitled to a declaratory judgment setting out his right to indemnification and to a money judgment in his favor for all expenses incurred, including, but not limited to, attorney's fees and litigation expenses, in defense of the claims asserted in said action in California and in other indemnified matters.

As the McKesson Defendants concede, an amendment to the cited complaint was filed. This amendment stated that the allegation quoted above was being replaced with: "Green is entitled to indemnification and to a money judgment in his favor for all expenses incurred, including, but not limited to, attorney's fees and litigation expenses, in defense of the claims asserted in said action in California and in other indemnified matters." The amendment further clarified, "None of the Plaintiffs in these consolidated actions seeks a declaratory judgment from this Court. Any prior pleading from any of the Plaintiffs seeking a declaratory judgment from this Court is hereby amended to delete any prior request for a declaratory judgment from this Court." And on appeal, Green reiterates he is "*not* seeking a declaratory judgment."[24]

There is no merit in the McKesson Defendants' contention that the trial court erred by rejecting their argument that the complaint filed by Green and HTG is time-barred. "It is a well established rule in Georgia that a paper is said to be filed, when it is delivered to the proper officer, and by him received to be kept on file."[25] Moreover, "a pleading deficiency as to subject matter jurisdiction is a procedural one which can be cured by amendment which would relate back to

---

[23] See *Mitchell v. Southern Gen. Ins. Co.*, 185 Ga. App. 870, 871 (1) (366 SE2d 179) (1988) (superior courts have exclusive jurisdiction to hear and determine a declaratory judgment action).

[24] (Emphasis in original.)

[25] *Valentine v. Hammill*, 258 Ga. 582 (372 SE2d 435) (1988) (citation and punctuation omitted).

the time of the filing of the original complaint."[26] And a party has the "unfettered right" to "amend his pleading as a matter of course and without leave of court at any time before entry of a pretrial order."[27] As there has been no entry of a pretrial order, the amendment — expressly stating that no declaratory judgment is being sought — relates back to the date the original complaint was filed in state court. Thus, no error has been shown with respect to the challenged ruling, and that ruling is affirmed in Case No. A09A0524. Green's indemnification claim, therefore, remains following this appeal.

### Case Nos. A09A0526 and A09A0527

5. In Case Nos. A09A0526 and A09A0527, the McKesson Defendants and Gilbertson, respectively, challenge only the denial of a motion pursuant to OCGA § 24-9-67.1 to exclude the testimony of the plaintiffs' damages expert. Plaintiffs assert that the expert would provide evidence concerning the calculation, under the benefit of the bargain standard, of damages suffered by the plaintiffs in connection with their common law fraud claims. Given our ruling in Divisions 1[28] and 7,[29] their challenges are moot, and the appeals in Case Nos. A09A0526 and A09A0527 are thus dismissed.

### Case No. A09A0528

6. In this case, Gilbertson appeals from the same orders at issue in Case No. A09A0524, adopting the arguments pursued in that case by the McKesson Defendants.[30] In accordance with our rulings in Divisions 3 and 4,[31] this appeal is dismissed in part and the judgment is affirmed in part.

### Case No. A09A0529

7. In this case, Gilbertson appeals from the same order at issue in Case No. A09A0525, adopting the arguments pursued in that case by the McKesson Defendants.[32] Judgment in this case is reversed in

---

[26] *Bolden v. Barton*, 278 Ga. 831, 833 (1) (607 SE2d 889) (2005) (citation and punctuation omitted).

[27] *Nelson v. Zant*, 261 Ga. 358, 359 (2) (405 SE2d 250) (1991), quoting OCGA § 9-11-15 (a).

[28] Supra.

[29] Infra.

[30] The record shows that Gilbertson asserted the pertinent arguments in a motion for summary judgment.

[31] Supra.

[32] The record shows that Gilbertson joined the McKesson Defendants' motions for summary judgment.

accordance with our rulings in Divisions 1 and 2.[33]

### Case No. A09A0530

8. In this case, Gilbertson appeals the denial of his summary judgment motion on the plaintiffs' claims for civil conspiracy to defraud, setting forth numerous procedural and substantive arguments. The plaintiffs have countered Gilbertson's arguments. But even if the plaintiffs could overcome other hurdles erected by Gilbertson, their conspiracy claims cannot survive their failure to show an actionable misrepresentation. As the plaintiffs recognize, "[t]he cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage."[34] The plaintiffs specify that the underlying tort in the instant case is fraud, citing the allegations underlying their common law fraud claims. But as plaintiffs' conspiracy claims are dependent upon the viability of their fraud claims, they too must fail.[35] Because the trial court erred in denying Gilbertson's motion, the judgment in Case No. A09A0530 is reversed.[36]

*Judgments affirmed in part and appeals dismissed in part in Case Nos. A09A0524 and A09A0528. Judgments reversed in Case Nos. A09A0525, A09A0529, and A09A0530. Appeals dismissed in Case Nos. A09A0526 and A09A0527. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 14, 2009

*Morris, Manning & Martin, John H. Williamson*, for McKesson Corporation et al.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Stefanie H. Jackman*, for Gilbertson.

*Fellows & LaBriola, Henry D. Fellows, Jr., Eugenia W. Iredale, Schklar, Ney & Heim, Edwin J. Schklar, William B. Ney, Magdalena M. Heim*, for appellees.

---

[33] Supra.

[34] *Dyer v. Honea*, 252 Ga. App. 735, 738 (2) (557 SE2d 20) (2001) (punctuation omitted); see *Jones v. Spindel*, 113 Ga. App. 191, 193 (147 SE2d 615) (1966) (where civil liability for a conspiracy is sought to be imposed, the conspiracy itself furnishes no cause of action), disapproved on other grounds, *Monumental Properties of Ga. v. Frontier Disposal*, 159 Ga. App. 35, 37 (2) (282 SE2d 660) (1981).

[35] *Dyer*, supra; see *Parrish,* supra at 650 (3); see also Division 1, supra.

[36] See *Parrish*, supra at 648 (2).