**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 22, 2013**

# In the Court of Appeals of Georgia

A12A1768. LEVINE v. SUNTRUST ROBINSON HUMPHREY.     DO-080

A12A1880. LEVINE v. SUNTRUST ROBINSON HUMPHREY.     DO-087

A12A1881. SUNTRUST ROBINSON HUMPHREY v. LEVINE.     DO-088

A12A1882. SUNTRUST ROBINSON HUMPHREY v. LEVINE.     DO-089

DOYLE, Presiding Judge.

These consolidated appeals arise from an action filed in Fulton County Superior Court by Morton P. Levine, as the Chapter 11 Bankruptcy Trustee for the estate of Flooring America, Inc., (f/k/a The Maxim Group, Inc.; hereinafter "Maxim") against Suntrust Robinson Humphrey (f/k/a The Robinson-Humphrey Co., LLC; hereinafter "Suntrust"),[1] alleging damages to the estate of Maxim as a result of Suntrust's professional negligence; breach of contract; negligent misrepresentation;

---

[1] Maxim's complaint also named eight other corporate and individual defendants, who have since settled the claims with the Trustee.

fraud; aiding and abetting fraud on the part of culpable Maxim board members; breach of fiduciary duty; aiding and abetting CEO A. J. Nasser's breach of fiduciary duty; and civil conspiracy in concert with Nasser, other board members, and other fiduciary defendants in relation to Suntrust's role as financial advisor to Maxim in connection with (1) a 1998 purchase of 266 retail stores from Shaw Industries ("the Shaw Transaction"); and (2) a 1999 sale of Maxim's manufacturing subsidiary ("the Image Transaction").

As an initial matter, we note that neither Maxim nor Suntrust has fully complied with Court of Appeals Rule 25 (c) (3) (iii), which requires that references to the record be indicated by specific record citations. And when record citations have been provided, in many instances citations given by *both parties* did not support the factual assertions in the briefs, while in some instances such assertions were completely unsupported with record cites.

We take this opportunity to "remind counsel that it is not the job of the Court of Appeals to cull the record on behalf of a party, and that a lack of proper citations greatly hinders our consideration of the issues on appeal."[2] The lack of supporting

---

[2] (Footnote omitted.) *Latimore v. City of Atlanta*, 289 Ga. App. 85, 86 (1) (656 SE2d 222) (2008).

citations and the liberties taken by counsel in characterizing certain documentary evidence and deposition testimony is especially egregious in a case such as this, with a record involving over 218 volumes and over 19,000 pages of evidence relating to complex business transactions.

> [W]hen ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. Further, any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment. When this Court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence.[3]

Viewed in the light most favorable to Maxim,[4] at the time of the Shaw and Image Transactions, Maxim was a company in the floor covering industry, and it owned retail stores as well as a carpet manufacturing company known as Image. Suntrust was engaged as a financial advisor to Maxim for the first time in 1995 and served in that role on several transactions, including the two at issue. The first

---

[3] (Citations and punctuation omitted.) *EZ Green Assoc. v. Ga.-Pacific Corp.*, 318 Ga. App. 655, 657-658 (1) (a) (734 SE2d 485) (2012).

[4] See id.

transaction was the 1998 Shaw Transaction, in which Maxim sought to purchase 266 retail stores from Shaw Industries; Suntrust was engaged in late 1997 to advise the company with regard to the transaction, including evaluating information about the transaction as provided by Maxim and Shaw and advising Maxim's board via a fairness opinion regarding the potential transaction and its likely cost to Maxim's business. The second transaction was the 1999 sale of the Image manufacturing arm, in which Suntrust was engaged to serve as financial advisor, including assisting Maxim to determine whether the sale of Image "was advisable."

After Maxim acquired Shaw's stores, it discovered various discrepancies between Suntrust's analysis of the stores, concluding that the analysis had overvalued the stores by $132 million to $203 million. Although Maxim continued to receive profits from the manufacturing arm of its company, Suntrust contended that the market would react favorably to Maxim's divestment of the Image subsidiary. In June 2000, however, Maxim filed for Chapter 11 bankruptcy protection.

After filing the petition, the bankruptcy court appointed Morton P. Levine as Trustee to oversee the estate. And in 2002, the Trustee filed the instant proceedings on behalf of the bankruptcy estate against various parties alleged to have negligently or intentionally caused the destruction of Maxim's business by violating fiduciary

4

duties, breaching contracts, and negligently or intentionally misrepresenting information about certain business transactions, which transactions led to the insolvency of the company. Although the complaint alleged claims against Maxim's CEO Nasser and other members of Maxim's board, the Trustee contended that if Suntrust and other fiduciary defendants had fulfilled their obligations by providing appropriate information to Maxim's board regarding the Shaw and Image Transactions, the non-culpable board members would have been able to prevent those transactions, which transactions, among other things, led to the destruction and eventual liquidation of the corporation. The trial court appointed a Special Master to oversee the case, and all defendants except Suntrust settled with the Trustee.

Throughout the course of litigation, the parties filed various motions for dismissal and summary judgment, and Suntrust also moved to exclude the expert testimonies of James Harris, Harry Potter, and Alfred King.[5] Suntrust also filed a statement of nonparties at fault. On August, 4, 2010, the Special Master signed a Final Order and Report, incorporating forty-nine separate suborders spanning a five-year time period, recommending that the trial court (1) grant partial summary

---

[5] A number of these motions were filed by Merrill Lynch with which Suntrust joined. Merrill Lynch eventually settled with the Trustee.

5

judgment with respect to Maxim's negligence claims to the extent that Maxim asked for damages equaling the entire destruction of the business; (2) grant summary judgment with respect to Maxim's intentional tort claims of fraud, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and conspiracy; (3) grant partial summary judgment to Maxim with regard to certain clauses within the parties' engagement letters; and (4) exclude the expert testimonies of Potter and, in part, King. The Special Master also recommended (1) denying the parties' remaining claims for summary judgment and (2) denying Suntrust's motion to exclude Harris's expert testimony. In its February 24, 2011 order, the trial court entered an order adopting the Special Master's report and recommendation, and these appeals followed, which we have consolidated for review.

In Case Number A12A1768, Maxim appeals from the trial court's order adopting the Special Master's report, alleging that the trial court erred by (1) granting partial summary judgment with respect to the damage claims based on the Special Master's erroneous conclusion that Maxim was required to show the exact amount of damages resulting from Suntrust's breach; (2) granting summary judgment on Maxim's fraud claims for lack of evidence of scienter; and (3) by excluding the expert testimonies of Potter and King. In Case Number A12A1881, Suntrust cross-appeals,

alleging that the trial court erred by (1) failing to exclude the expert testimony of Harris; (2) denying partial summary judgment as to the remaining negligence claims; (3) denying summary judgment as to the negligent misrepresentation claim; (4) denying summary judgment as to the breach of fiduciary duty claim; (5) denying summary judgment as to the breach of contract claim; and (6) denying summary judgment on the basis of the *in pari delicto* doctrine. And in Case Number A12A1882, Suntrust appeals, alleging that the trial court erred by granting partial summary judgment to Maxim with regard to certain clauses within the parties' engagement letters.

*Case No. A12A1768*

1. Maxim first argues that the trial court erred by granting partial summary judgment with respect to those portions of claims from which it argues that the entire destruction of the business flowed because the Special Master incorrectly determined that Maxim was required to provide evidence of apportionment of those damages at the summary judgment stage. We agree.

OCGA § 51-12-33 establishes the mechanism by which a trier of fact apportions damages.[6] First, if the plaintiff is some degree responsible for its own injuries, the trier of fact determines the percentage of fault of the plaintiff,[7] and the judge thereafter reduces the total amount of damages awarded in proportion to the plaintiff's percentage of fault.[8] Next, in cases involving an action against more than one actor, the trier of fact apportions the remaining damages among the liable actors according to each actor's percentage of fault.[9] In its case against Suntrust, Maxim is not required to prove a case against any of the parties who previously settled, it only is required to establish duty, breach, causation, and damages against Suntrust. The fault of third parties, however, is considered "if the plaintiff entered into a settlement

---

[6] The parties stipulated that the provisions of the Georgia Tort Reform Act of 2005 govern. See Ga. L. 2005, p. 1, § 12.

[7] Of course, in the event that the jury determines that Maxim is 50 percent or more responsible for the injuries, then Maxim would not recover. See OCGA § 51-12-33 (g).

[8] See *McReynolds v. Krebs*, 290 Ga. 850, 850-851 (1) (a) (725 SE2d 584) (2012), quoting OCGA § 51-12-33 (a).

[9] See id. at 851 (1) (a), quoting OCGA § 51-12-33 (b).

8

agreement with the nonparty or if a defending party gives [required] notice . . . that a nonparty was wholly or partially at fault."[10]

To the extent that Suntrust urges that *Page v. Braddy*[11] requires complete summary judgment as to all Maxim's damages claims against Suntrust, it misreads the case. In *Page*, there were two separate injuries — timber converted on one side of a fence for which the defendant was responsible and timber converted on another side of a fence for which the defendant was not responsible.[12] In that case, there was no testimony as to what the damage was for each injury, only testimony as to the total damage for the entire amount of timber converted.[13] Here, in contrast, there is testimony that Suntrust's actions may have led to the eventual liquidation of Maxim, and the two transactions for which Suntrust has alleged to have acted in a culpable manner were the proximate cause of that damage. *Page*, therefore, is inapposite because there was no allegation of an indivisible injury for which multiple defendants

---

[10] OCGA § 51-12-33 (f) (1).

[11] 255 Ga. App. 124 (564 SE2d 538) (2002).

[12] See id. at 125-126.

[13] See id. at 127.

9

were liable. Instead, there were two independent tortfeasors with independent, divisible injuries.[14]

Here, in the end, the jury may determine that Suntrust is not liable for any damage beyond overpayment for Shaw's retail stores, or that Suntrust is liable only for a certain percentage of the ultimate losses of Maxim. But contrary to the finding of the Special Master, it is not a requirement at this stage that Maxim establish percentages of fault of Suntrust or any other actor, and the matter of apportioning the fault of Suntrust and any non-parties or Maxim, if any, is a matter for the jury.[15] Moreover, the Supreme Court of Georgia recently held,[16] without disapproving

---

[14] See id.

[15] See *McReynolds*, 290 Ga. at 853 (1) (b) ("Despite having ample opportunity to develop evidence against [a settling nonparty], [the defendant] conceded at the beginning of the trial that she had no evidence regarding [the settling nonparty's] potential liability other than the allegations in [the plaintiff's] complaint. The lack of evidence on which apportionment could be based also defeats [the defendant's] claim that she was entitled to apportionment under OCGA § 51-12-33 (c) and (d) on the ground that [the] nonparty . . . was partially at fault for [the plaintiff's] injuries and [had] entered into a settlement agreement with [the plaintiff].") (citations and punctuation omitted).

[16] See *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 366 (1) (729 SE2d 378) (2012).

*Polston v. Boomershine Pontiac-GMC Truck, Inc.*,[17] that it is the defendant's burden to establish a rational basis for apportioning fault to a nonparty.[18] To the extent that Maxim has established that Suntrust's alleged actions were the proximate cause of an approximate amount of damage, its claims survive summary judgment.[19]

Here, the Special Master specifically determined that Maxim had established the existence of a fact question as to whether Suntrust's actions in the Shaw Transaction and the Image Transaction led to Maxim's business losses. Thus, the Special Master's grant of partial summary judgment on the issue of the "entire destruction" damages, which was based on his incorrect reading of OCGA § 51-12-33, is hereby reversed.

---

[17] 262 Ga. 616 (423 SE2d 659) (1992).

[18] See *Couch*, 291 Ga. at 366 (1), citing *Polston*, 262 Ga. at 619.

[19] See *Wright v. Apartment Investment & Mgmt. Co.*, 315 Ga. App. 587, 591-592 (1) (c) (726 SE2d 779) (2012). See also *CRS Sirrine, Inc. v. Dravo Corp.*, 219 Ga. App. 301, 303 (1) (464 SE2d 897) (1995). "The rule against recovery of speculative damages relates primarily to speculation regarding proximate cause rather than extent. Once a plaintiff establishes that damages proximately flow from the defendant's alleged conduct, mere difficulty in fixing their exact amount should not be a legal obstacle to recovery. If a plaintiff can show with reasonable certainty the total amount of damages and the degree to which those damages are attributable to defendant, that is sufficient to support an award." (citation and punctuation omitted.) *Wright*, 315 Ga. App. at 591 (1) (c).

2. Maxim also argues that the trial court erred by granting summary judgment based on lack of evidence of scienter with regard to its claims of fraud, aiding and abetting fraud, aiding and abetting a breach of fiduciary duty, and conspiracy.

(a) To prevail on its fraud claim, Maxim

must show that [Suntrust] made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by [Maxim]; and, further, that [Maxim] acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by [Suntrust] and to [Maxim's] proximate injury.[20]

Here, Maxim contends that the Special Master erred by finding that it failed to establish a fact question as to whether Suntrust committed fraud when it prepared its analysis of the Shaw Transaction.[21] Maxim explains that it presented evidence

---

[20] (Punctuation omitted.) *McKesson Corp. v. Green*, 299 Ga. App. 91, 93 (683 SE2d 336) (2009).

[21] To the extent that Maxim stated a fraud claim as to the Image Transaction, the Special Master determined that Maxim abandoned any claim; on appeal Maxim has failed to challenge that finding, and therefore, to that extent, the trial court's grant of partial summary judgment as to this issue stands. See Court of Appeals Rule 25 (a) (3) and (c) (2). See also *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 365 (1) (724 SE2d 53) (2012).

12

sufficient to establish a question of fact as to whether Suntrust recklessly or intentionally misrepresented the various costs related to the acquisition of the Shaw stores, and Suntrust had a motive to misrepresent the financial condition of the stores in order to support the transaction because Suntrust received higher fees as a result of the completion of the transaction.

> Given that fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination.[22]

Although slight, Maxim has presented sufficient evidence (including the fact that Suntrust doubled $10 million in vender support strategies days before making its presentation to Maxim and failing to report millions of dollars of corporate expenses) that could authorize a jury to find that Suntrust's analysis failures were made with the intent to deceive Maxim, that Maxim justifiably relied on those representations, and that damage therefrom ensued at the very least in the amount that Maxim allegedly

---

[22] (Punctuation omitted.) *Almond v. McCrainie*, 283 Ga. App. 887, 889 (2) (643 SE2d 535) (2007).

overpaid for the Shaw stores.[23] Although the fact that Suntrust stood to make $500,000 more in the event that the transaction closed could also support a finding of deception and intent to mislead on the part of Suntrust, rather than mere negligence.[24] Accordingly, to the extent that the trial court order granted partial summary judgment as to Maxim's fraud claim, it is hereby reversed .

(b) With regard to Maxim's claims of aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and conspiracy, we affirm the grant of summary judgment. In its opening brief on appeal, Maxim contends that the same evidence of scienter supporting its fraud claim "is also evidence from which a jury could conclude that [Suntrust] acted with knowledge and intent required to support a verdict on any or all of the Trustee's intentional tort claims." Maxim fails to point to any non-speculative evidence of conspiracy or collusion between Suntrust and other defendants; conclusory allegations are insufficient to establish error on the part of the

---

[23] See, e.g., *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 82-83 (1) (663 SE2d 779) (2008). Compare with *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 785-787 (3) (a) (613 SE2d 112) (2005) (no showing of damages from alleged fraud).

[24] See, e.g., *Lively v. Garnick*, 160 Ga. App. 591, 592 (1) (287 SE2d 553) (1981).

Special Master, and therefore, to the extent that the trial court granted partial summary judgment as to these claims, that order is affirmed.[25]

3. Finally, Maxim argues that the trial court erred by excluding expert testimony. We agree.

"The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[26]

> The standard for admissibility of expert testimony is governed by OCGA § 24-9-67.1 (b),[27] which provides [if] scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of

---

[25] See *City of College Park v. Sheraton Savannah Corp.*, 235 Ga. App. 561, 564 (6) (509 SE2d 371) (1998). See also Court of Appeals Rule 25 (c) (2) (deeming an argument abandoned when a party offers no citation of authority or meaningful argument in support of an enumeration of error). See also *Premier/Ga. Mgmt. Co.*, 272 Ga. App. at 788 (3) (c) ("To recover damages for a civil conspiracy, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.") (punctuation omitted). Accord *R.W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 867-868 (4) (601 SE2d 177) (2004) (explaining that technically speaking there is no civil claim for conspiracy apart from the claims for damages from torts committed by the overt acts of the individuals alleged to have conspired to commit tortious injury).

[26] (Punctuation omitted.) *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1) (712 SE2d 537) (2011).

[27] See OCGA §§ 24-7-702 & 24-7-703 (effective Jan. 1, 2013).

15

action to understand the evidence or to determine a fact in issue, a witness qualified as an expert may testify thereto in the form of an opinion or otherwise, if: (1) the testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.[28]

(a) *Alfred King.* Maxim urges this Court to reverse the trial court's order excluding the expert testimony of King regarding the value of Maxim. We agree.

(i) The Special Master found that King was qualified to provide an opinion of the value of Maxim, but determined that King's valuation approach was not testable and that King had no prior experience using the procedure he used in this case. The Special Master's conclusions, however, are unsupported by the record, and therefore, the determination to exclude the testimony on this basis was an abuse of discretion.

King testified that he used a standard valuation technique for assessing the true value of the business at various dates around the transactions. Although his valuation of the company at certain points differed from that based on a calculation using the

---

[28] (Punctuation omitted.) *Butler*, 310 Ga. App. at 25 (1). See also *Kumho Tire Co. v. Carmichael*, 526 U. S. 137 (119 SC 1167, 143 LE2d 238) (1999); *Gen. Elec. Co. v. Joiner*, 522 U. S. 136 (118 SC 512, 139 LE2d 508) (1997); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

16

relevant market capitalization for each time period, King explained the deviations he used in arriving at the amounts, and the reasons for those deviations; he explained that "[he] undertook the *exact type* of analysis [he] and all other valuation specialists, utilize in valuing a business enterprise where public information is not available,"[29] and that his real-world work in creating such valuations is reviewed by major accounting firms.

This is precisely the type of opinion that is susceptible to testing during cross-examination because the information King used at arriving at his opinions is available to the jury and to Suntrust and is not an untestable opinion.

(ii) The Special Master also determined that King's testimony should be excluded on the basis that it is irrelevant because his testimony was "based on the notion that the net decline in the net asset value of Maxim over time [wa]s a valid measure of [Suntrust's] liability."

Here, the Special Master's exclusion of King's opinion is an abuse of discretion because, as King stated, his expert testimony was to provide an opinion of the value of Maxim over the course of time before and after events that led to the failure of the company including the Shaw and Image Transactions. His opinions are

_____

[29] (Emphasis supplied and omitted.)

17

relevant *for the jury* to determine, in conjunction with other testimony and evidence, the amount of damages that Suntrust's alleged actions may have caused, which necessarily requires consideration of opinion evidence as to the value of the business. King specifically stated that he was not providing an opinion as to the actual amount of damage that Suntrust caused or that the decline in value of the business was equivalent to an amount of damages.

Accordingly, the portion of the order excluding King's expert opinion is reversed.

(b) *Harry Potter*. The Special Master excluded Potter's testimony as irrelevant for the same reasons he excluded King's without further discussion. Thus, based on our conclusions in Divisions 1 and 3 (a) (ii), supra, we reverse this portion of the order excluding expert testimony.[30]

*Case No. A12A1881*

---

[30] We note that while the Special Master makes no further discussion of Potter's qualifications, a review of his curriculum vitae establishes that he is qualified to provide such opinions, and indeed, he previously has testified as a forensic accountant on the issue of causation of damages in many other similar matters. See, e.g., *Grant Thorton, LLP v. FDIC*, 694 FSupp.2d 506, 522-523 (VII) (S.D. W.V. 2010), reversed on other grounds by *Grant Thornton, LLP v. FDIC*, 435 Fed. Appx. 188 (4th Cir. 2011); *FDIC v. Bakkebo*, 506 F3d 286, 294 (I) (B) (5) (4th Cir. 2007); *Bays Exploration, Inc. v. PENSA, Inc.*, Case No. Civ-07-754-D (2012 U.S. Dist. LEXIS 122127) (W.D. Ok. 2012) (unpublished);

18

4. Suntrust argues that the trial court erred by failing to exclude the expert testimony of James Harris. We disagree.

(a) First, Suntrust contends that the Special Master incorrectly concluded that Harris's opinion was reliable under OCGA § 24-9-67.1 (b) simply based on his experience, which Suntrust contends was foreclosed by the Supreme Court of Georgia in *HNTB Ga., Inc. v. Hamilton-King*.[31]

In his order addressing Suntrust's motion to exclude Harris's testimony, the Special Master concluded that after reviewing Harris's testimony, including his 55-page expert report, his 167-page rebuttal report, and over 1,000 pages of deposition testimony, Harris's opinion should be admitted because he possessed extensive experience as a financial advisor and some experience with fairness opinions, as compared to the expert at issue in *HNTB Ga.*, who had no practical experience with the particular practice of traffic control other than post-retirement study.[32] The Special

---

[31] 287 Ga. 641 (697 SE2d 770) (2010).

[32] See id. at 645 (2). See also *Brady v. Elevator Specialists, Inc.*, 287 Ga. App. 304, 306-307 (1) (653 SE2d 59) (2007) (upholding denial of motion to exclude expert testimony because despite the fact that the expert's opinion of industry standard could not be tested or shown in a publication "in some cases, 'the relevant reliability concerns may focus upon personal knowledge or experience,'" and citing *Cotton v. Phillips*, 280 Ga. App. 280, 286 (663 SE2d 655) (2006), for the proposition that "*Daubert's* role of ensuring that the courtroom door remains closed to junk science

19

Master's decision acknowledged that Harris's opinion lacked the normal testable methods under *Daubert*; however, he concluded that Harris's opinion was based on his knowledge and professional experience of actually producing fairness reports.

(b) Suntrust also contends that even if its reading of *HNTB Ga.* was incorrect, Harris's opinion should have been excluded because he failed during his deposition to cite the appropriate standard of care for financial advisers and because his opinions were excluded in the case of *In re: Nellson Nutraceutical, Inc.*[33] The *Nellson* case, however, is inapplicable here because that court found Harris's valuation of the company based on the methodology of discounted cash flow analysis to be unreliable.[34] The court explicitly did not determine that Harris himself lacked the experience and expertise necessary to have presented a valuation opinion based on a different methodology.[35] Here, Harris was not called to testify as an expert in valuation , but rather as an expert as to the fiduciary duties of financial advisors, and Suntrust fails to point to a specific, testable portion of his testimony that is unreliable

is not served by excluding testimony supported by extensive relevant experience.").

[33] 356 B.R. 364, 377-378 (B.C. Del. 2006).

[34] 365 B. R. at 374-375.

[35] 365 B. R. at 377-378.

20

as did the creditors in the *Nellson* case. Although Suntrust contends that Harris failed to follow accepted authorities on the subject, Suntrust fails to state what those standards were or provide argument as to how Harris's opinion deviated from those standards in a way which would render his opinion of Suntrust's performance unreliable.

It is helpful to remember that

> *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. In some cases (even cases involving non-scientific expert testimony), the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience. Whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.[36]

Accordingly, Suntrust has failed to establish that the Special Master's denial of its motion to exclude the expert testimony of Harris (or the trial court's adoption of that denial) was a manifest abuse of discretion, and this enumeration is therefore without merit.

---

[36] (Punctuation and emphasis omitted.) *First Ten. Bank Nat. Assoc. v. Barreto*, 268 F.3d 319, 335 (II) (B) (1) (6th Cir. 2001) (upholding district court's admission of banking expert's testimony even though it's determination of the reliability of his testimony rested largely upon his experience in the industry).

5. Suntrust also argues that the trial court erred by denying complete summary judgment as to all of Maxim's claims because it failed to establish evidence of any damages that were proximately caused by Suntrust's actions to the exclusion of all other causes; however, based on our holding in Division 1, this enumeration is without merit.

6. Suntrust argues that the trial court erred by denying summary judgment as to Maxim's negligent misrepresentation claim.

> [O]ne who supplied information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.[37]

(a) Suntrust first argues that the trial court should have granted summary judgment as to this claim because the claim of negligent misrepresentation is not available to contracting parties.

---

[37] (Punctuation omitted.) *Badische Corp. v. Caylor*, 257 Ga. 131, 132-133 (356 SE2d 198) (1987).

Relying on *Hendon Properties, LLC v. Cinema Dev., LLC*,[38] Suntrust argues that the tort of negligent misrepresentation is unavailable to a party in privity with the alleged misrepresenting party. It is true that in *Hendon Properties*, this Court stated in dicta that "negligent misrepresentation, being a tort, presupposes the absence of an enforceable contractual relationship between the parties."[39] This mischaracterizes the cited authority, *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*,[40] which does not stand for the proposition that *all claims* of negligent misrepresentation are barred when the two parties are in privity. Instead of foreclosing the possibility of bringing a negligent misrepresentation claim against an individual with whom the plaintiff was in privity, *Robert & Co.* affirmatively stated that certain individuals not in privity with a defendant could seek redress under the cause of action.[41] And in any event, the

---

[38] 275 Ga. App. 434, 439 (2) (a) (620 SE2d 644) (2005).

[39] Id.

[40] 250 Ga. 680 (300 SE2d 503) (1983).

[41] See id. at 681-682. See also *Glen Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508, 512 (3) (417 SE2d 197) (1992) ("The breach of this legal duty, imposed by contract, but existing in law apart from the contractual obligation, may constitute both a tort arising from the contract, and a breach of the contractual relationship itself. In such tort cases the injury to the plaintiff has been an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit.") (citation and punctuation omitted); OCGA § 51-

23

statement in *Hendon Properties* was dicta,[42] it is not binding authority on the matter, and we do not follow it here.

(b) Suntrust also argues that Maxim's claim fails because Suntrust only supplied information based on data provided by Maxim and Shaw, because members of Maxim's board did not recall finding error with Suntrust's work at the time of the Shaw Transaction, or because other fiduciaries independently verified the information provided by Suntrust. These arguments are unpersuasive. The testimony of board members stating conclusions of law is insufficient to establish error in the Special Master's determination that a question of fact exists as to whether the information provided to Maxim, which included Shaw's information later found to be incorrect, was negligently passed on to Maxim by Suntrust. Even if Suntrust disclosed that it was relying on data provided by Shaw, that does not foreclose at the summary judgment stage the possibility that Suntrust was negligent in representing that data as true if it knew or should have known that the data was inaccurate. Accordingly,

1-11 ("no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract. . . .").

[42] See 275 Ga. App. at 438 (2) (a).

24

Suntrust has failed to establish that the Special Master erred by finding the existence of a question of fact as to this cause of action.

8. Suntrust argues that the trial court erred by denying summary judgment as to the breach of fiduciary duty claim. We disagree.

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[43]

> The existence of a confidential [or fiduciary] relationship is a question for the jury. Such relationship may be created by law, contract, or the facts of a particular case. Moreover, [because] a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of this relationship is generally a factual matter for the jury to resolve.[44]

(a) Suntrust first argues that the Special Master should have granted summary judgment as to this claim because it did not owe a fiduciary duty to Maxim. Nevertheless, the Special Master correctly determined that the issue of the existence

---

[43] *All Business Corp. v. Choi*, 280 Ga. App. 618, 621 (1) (634 SE2d 400) (2006).

[44] (Punctuation omitted.) *Tankersley v. Barker*, 286 Ga. App. 788, 790 (1) (651 SE2d 435) (2007).

of a fiduciary relationship is a question for the jury unless there is a complete absence of evidence of such a relationship, which is not the case here.

(b) Citing 12 pages of deposition testimony, Suntrust contends that Maxim has failed to establish a breach of any fiduciary relationship because "[n]one of the participants in either the Shaw or Image [Transactions] ever claimed that [Suntrust] did something wrong or did not do something it was supposed to." Those statements mostly amount to a lack of any recall of any discussion at Maxim about whether Suntrust was negligent with regard to the two transactions, with one exception that consisted of a board member stating that Suntrust's fairness report appeared to contain the type of analyses that other companies would have used, and in his opinion Suntrust provided a good report. Such statements are insufficient to establish that the Special Master erred by finding an existing question of fact that a breach occurred.[45]

9. Suntrust argues that the trial court erred by denying summary judgment as to the breach of contract claim because "the Special Master and [Maxim failed to cite]

---

[45] Compare with *R.W. Holdco, Inc.*, 267 Ga. App. at 865 (1) (b) (holding that no factual dispute existed as to whether defendant breached an alleged fiduciary duty because the defendant "did not recommend the transaction. It did not counsel [the plaintiff] on the wisdom of entering into the transaction. It provided no investment advice.").

any evidence that shows [Suntrust] did not do exactly what it was contractually obligated to do." We disagree.

> Court of Appeals Rule 25 (a) (1) provides: Record and transcript citations shall be to the volume or part of the record or transcript and the page numbers that appear on the appellate record or transcript as sent from the trial court. Court of Appeals Rule 25 (c) (2) (i) provides: Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration. And it is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record.[46]

Without providing any citation to authority, and without stating what it *was* required to do under the contract or how it completed those requirements, Suntrust merely cites to the same 12 pages of deposition testimony summarized in Division 7 (b) supra. This is simply insufficient to establish error on the part of the Special Master or to show that no questions of fact exist as to whether Suntrust breached any contractual obligations with Maxim over the course of the two transactions at issue. It is incumbent on the party alleging error to demonstrate it within the record,

---

[46] (Punctuation omitted.) *EZ Green Assoc.*, 318 Ga. App. at 661-662 (3).

especially in one of this magnitude, and Suntrust simply has failed to establish that the Special Master was incorrect to find such a fact question existed.

10. Suntrust argues that the trial court erred by denying summary judgment on the basis of *in pari delicto* doctrine. We disagree.

OCGA § 23-1-15, states that "[w]hen both parties are equally at fault, equity will not interfere but will leave them where it finds them. The rule is otherwise if the fault of one decidedly overbalances that of the other." Relying on this, Suntrust contends that Maxim is barred from asserting claims against it because Maxim's board members and directors were equally or more at fault for the economic losses sustained by the business as a result of the acquisition of the Shaw stores and the sale of Image.

The Code section stands for the proposition that when two parties are equally at fault, one may not recover from the other; however, as the Special Master correctly determined, there are questions of fact here about the relative fault of each party.[47] Maxim is not completely foreclosed from recovery unless it is shown that its own negligence or fraud was equal to or greater than that of any negligence or fraud on the

---

[47] See *Holmes v. Henderson*, 274 Ga. 8, 8-9 (1) (549 SE2d 81) (2001); *BEA Sys. v. Webmethods Inc.*, 265 Ga. App. 503, 510-511 (2) (595 SE2d 87) (2004).

28

part of Suntrust, as the Special Master and trial court correctly determined, and the Special Master's denial of summary judgment on this issue to Suntrust was merely a finding that such fact questions exist and not that Suntrust is foreclosed from making these arguments to the jury.

*Case No. A12A1882*

11. Finally, Suntrust contends that the trial court erred by granting partial summary judgment in favor of Maxim with regard to specific language contained in the parties' engagement letters for the Shaw and Image Transactions.

Pretermitting whether Suntrust should have incorporated this argument into a single brief on appeal with the arguments contained in Case No. A12A1881, because we find no error with the Special Master's order, we affirm that portion of the grant of partial summary judgment.

"[T]he construction of a contract is a question of law for the court that is subject to de novo review. Where contract language is unambiguous, construction is unnecessary[,] and the court simply enforces the contract according to its clear terms."[48]

---

[48] (Citation and punctuation omitted.) *Moore 7 Moore Plumbing, Inc. v. Tri-South Contractors, Inc.*, 256 Ga. App. 58, 61 (1) (567 SE2d 697) (2002).

(a) *The Engagement Clauses.* Suntrust takes issue with that portion of the Special Master's final order that addressed clauses within the engagement letters for the two transactions at issue. The Shaw clause states: "[t]his financial advisory engagement is intended to provide the necessary advice, direction[,] and support to maximize shareholder value for [Maxim] in whatever form or direction or through whatever Transaction or series of Transactions makes the most sense." Similarly, the Image clause states that Maxim "engages [Suntrust] to serve as [Maxim's] financial advisor for the purpose of . . . assisting [Maxim] and its Board of Directors in its consideration of various strategic alternatives, including determining whether a sale of its wholly-owned subsidiary Image Industries, Inc. . . . is advisable . . . ." The Special Master simply determined that these clauses, in conjunction with other disputed material facts, create a jury question as to the extent of the contract services that Suntrust was engaged to provide and whether those services were not provided by Suntrust, resulting in a breach of contract.

(b) *The Indemnity/Right to Rely Provisions.* Finally, the Special Master addressed the question of whether the Indemnity or Right to Rely Provisions of the two engagement letters completely foreclosed the actions at hand.

(i) The Image engagement letter stated that "[Maxim] agreed to indemnify and hold harmless [Suntrust] . . . from any losses, claims, damages[,] or liabilities relating to . . . [Suntrust's] engagement letter" subject to additional portions of the Indemnity Clause, which limited the indemnity to cases not involving gross negligence or bad faith. The Special Master determined that questions of fact exist as to whether such circumstances existed. This reading is supported by the plain language of the engagement letter.[49]

(ii) The Shaw letter stated that

[Maxim] shall indemnify [Suntrust] and hold it harmless against any losses, claims, damages[,] or liability to which [Suntrust] may become subject arising in any manner out of or in connection with the rendering of services by [Suntrust] hereunder, if it is finally judicially determined that such losses, claims, damages[,] or liability arose as a result of any information *furnished by [Maxim]* to [Suntrust] or to any third party being false or misleading in any material respect.[50]

With regard to this provision contained in the engagement letter, the Special Master essentially held that this provision did not shield Suntrust from liability for

_____

[49] See id.

[50] (Emphasis supplied.)

information obtained *from Shaw* for use in the fairness report regarding the Shaw Transaction although it would foreclose liability based on information obtained from Maxim.[51] This finding is based on an unambiguous and clear reading of the engagement letter,[52] and it does not constitute a finding that Suntrust actually committed any negligence or fraud with regard to that transaction or that Suntrust obtained or used any information from parties other than Maxim. Thus, the Special Master correctly determined that this provision did not completely foreclose Maxim's claims against Suntrust because questions of fact existed as to whether Suntrust wrongfully provided false or misleading information to Maxim, which Suntrust obtained from parties other than Maxim, thereby causing damage to the company.

*Case No. A12A1880*

12. Finally, Maxim's duplicate appeal docketed as Case No. A12A1880 is hereby dismissed as moot.

---

[51] Compare with *The HA2003 Liquidating Trust v. Credit Suisse Securities (USA) LLC*, 2006 U.S. Dist. LEXIS 97361 at *19 (Case No. 04 C 3163; N.D. Ill. 2006) (finding that engagement letter shielded financial advisor of liability because it stated that advisor would make recommendations based on information provided by client *and target* "without assuming any responsibility for independent investigation or verification thereof") (unpublished).

[52] See *Moore 7 Moore Plumbing, Inc.*, 256 Ga. App. at 61 (1).

*Judgment reversed in part and affirmed in part in Case Nos. A12A1768 and A12A1881. Judgment affirmed in Case No. A12A1882. Case No. A12A1880 dismissed as moot. Andrews, P. J. and Boggs, J., concur.*