**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 5, 2016**

# In the Court of Appeals of Georgia

A16A0344. BROWN v. TUCKER.

A16A0345. TUCKER v. BROWN.

BARNES, Presiding Judge.

Tisha Tucker was a passenger in a pickup truck driven by Tammy Brown when Brown struck a tractor-trailer rig parked by the road. Tucker sued Brown for her resulting injuries, and Brown identified the tractor-trailer driver as a non-party against whom the jury should apportion fault. After trial, the jury returned a verdict of $2 million, apportioning 40 percent fault to the tractor-trailer driver and 60 percent to Brown. The trial court subsequently awarded Tucker an additional $533,180 in attorney fees and expenses of litigation under the offer of settlement statute, OCGA § 9-11-68 (d).

Both parties have appealed. Brown enumerates seven errors related to evidentiary issues, jury charges, and the court's response to a jury question regarding apportionment. Tucker enumerates three errors, all of which relate to her contention

that the trial court should have granted her motion for a directed verdict of 100 percent liability against Brown. For the reasons that follow, we affirm.

The evidence before the jury included the following: Passenger Tucker called Driver Brown on cross-examination, and Brown admitted that, before the collision, the sun had been in her eyes so badly that she could not see in front of her; that she did not put her visor down, shield her eyes with her hand, or don sunglasses, and that she continued driving for some distance without being able to see where she was going. She further admitted that she first saw the tractor-trailer after she hit it, and that if she had seen it, she could have avoided it. The jury then made a site visit.

Next, an eyewitness to the collision testified that he saw the tractor-trailer pulling out of a neighbor's driveway and heard it sputtering "like something was wrong with the motor." He heard the tractor cut off, saw where the rig was parked, looked down, and looked up to see Brown's pickup truck hit the back end of the flatbed trailer. According to the witness, the back tire was on the fog line and the back end of the trailer was sticking about a foot and a half into the road. The tractor would not start, and the witness testified that, although a driver paying attention could have avoided hitting the trailer as it sat, he retrieved his bulldozer and pushed the back end

of the trailer completely out of the road anyway because the wrecked pickup truck created a distraction.

A second witness testified that she heard the tractor's engine making "spitter spatter" noises as it drove up the driveway across the street and pulled onto the side of the road. The driver got out, the witness turned away, and one to five minutes later she heard a "big boom" when Brown's pickup hit the trailer. She testified that the trailer had been protruding only a few inches into the road before it was moved.

A third witness testified that he heard the collision and ran out to assist the pickup truck occupants and assess the scene. Brown had stepped out of the truck but her two passengers were still inside, and after the witness wrenched the passenger door open, Tucker's arm fell a little and "blood poured out of the jacket" she was wearing. The witness wrapped his shirt around her arm and waited with both passengers until the ambulance came. He testified that a small section of the trailer was a few inches over the fog line into the road when Brown hit it.

Tucker testified that Brown had been driving Tucker back to her mother's house with Brown's daughter-in-law, Brooke Roberson, sitting between Brown and Tucker. Tucker noticed the parked tractor-trailer ahead on the side of the road ahead of them but was looking out the window daydreaming when Brown hit it. The EMT

3

who treated Tucker at the scene and the surgeon who operated on her lacerated finger, broken arm, and dislocated elbow both testified about Tucker's injuries.

After Tucker rested her case, the defense called three deputy sheriffs who had responded to the scene, Roberson, and the state trooper who was in charge of investigating the collision. The trooper testified about his training and experience and his conversations with Brown and Lee Patterson, who had identified himself as the driver of the tractor-trailer rig, which was owned by someone else. After describing his physical investigation, the trooper concluded that in his opinion the tractor-trailer had not been parked completely off the roadway when Brown hit it and that Brown had not been speeding. Brown was not called to testify on direct.

*Case Number A16A0344*

1. Brown argues that the trial court erred in granting Tucker's motion in limine to exclude the state trooper's opinion testimony that the cause of the collision was the tractor-trailer's protrusion into the roadway, rather than Brown's ability to see where she was going. After the trooper testified about his investigation, the jury was excused and Brown made a proffer of the trooper's testimony. Brown asked the trooper, "Combining all the factors you talked about so far, ... were you able to reach

4

a conclusion in your mind as to what the cause of the accident was?" The trooper

answered yes, and this exchange followed:

> QUESTION: Based on your experience and training, what opinion, if
> any, do you have as to what the cause of this accident was?
> ANSWER: Okay. The parked tractor-trailer being partially in the
> roadway.
> QUESTION: Why is that?
> ANSWER: The roadway is 20 feet wide. If you are negotiating a curve
> and you come around a curve and you don't see something that is
> partially in the roadway, you're going to hit it. And that's basically what
> happened in this accident here.
> QUESTION: Did the sun figure into that at all?
> ANSWER: The sun did figure in. It's setting in the west, and if you got
> sunlight in your eyes while you're negotiating a curve, it could possibly
> happen.

Tucker's objection to this proffered testimony was that "opinions such as [']if

you don't see something in the roadway, you're going to hit it['] are certainly

something that's within the [ken] of the jury," and that "it was not beyond the jury's

ability to weigh the position of the truck versus the effect of the sun." The trial court

agreed. It reasoned that the evidence presented during the trial clearly presented the

question of how much the tractor-trailer in the roadway and how much the sun in

Brown's eyes caused or contributed to the collision. Sustaining Tucker's objection,

5

the court found that the last questions quoted above clearly went to the ultimate issue in the case, which was as easily determined by the jury as by the trooper.

We review a trial court's evidentiary determinations only for abuse of discretion. *Whitlock v. Moore*, 312 Ga. App. 777, 779 (1) (720 SE2d 194) (2011). Brown argues that the trial court abused that discretion by sustaining Tucker's objection to the proffered opinion testimony, which she argues was admissible because it was based on both the trooper's examination of physical evidence at the scene and on witness interviews.

Generally, an officer with investigative training and experience may relate his opinion about the events that led to a vehicular collision, based on his observations, and may even testify about an ultimate issue if his conclusion exceeds the average juror's ken and is not a determination of fault. *Fortner v. Town of Register*, 289 Ga. App. 543, 545-546 (1) (657 SE2d 620) (2008).

The trooper in this case did testify that in his opinion, based on his investigation, the trailer that Brown struck was protruding some distance into the road and the sun was in Brown's eyes. His conclusion about these factors was a proper matter for his testimony, as was the opinion of the investigating officer in *Fortner* that the decedent's failure to stop at a stop sign was "a contributing factor of the

6

accident." 289 Ga. App. at 545 (1). But the jury in this case did not require an expert's opinion regarding whether the tractor-trailer's location was "the" ultimate cause of the collision.

> Although an experienced police officer can be qualified as an expert to give opinion testimony about the cause of a traffic accident, it remains settled law in Georgia that expert opinion testimony is unnecessary and improper if a jury would be able to ascertain the cause of the accident on its own and without any such testimony.

(Citation omitted.) *Whitlock,* 312 Ga. App. at 779-780 (1).

Brown argues that the officer's testimony in this case was admissible because it was based on his personal investigation in addition to witness statements, unlike the properly excluded evidence in *Whitlock*, 312 Ga. App. at 778-780 (1),[1] and the erroneously admitted evidence in *Purcell v. Kelley*, 286 Ga. App. 117, 118 (1) (648 SE2d 454) (2007).[2] This argument misses the point, which is that in this case, whether

---

[1]In *Whitlock*, the investigating officer simply repeated as fact the statements of witnesses describing the events that led to the collision, rather than investigating the physical evidence and drawing conclusions that required the application of expertise. 312 Ga. App. at 779 (1).

[2]In *Purcell*, the trial court erred in admitting the officer's testimony that the defendant ran a red light, because that conclusion was based solely on witness testimony and the jury could determine for itself whether the witnesses were being truthful. 286 Ga. App. at 118 (1).

the collision was caused by the placement of the parked tractor-trailer, by Brown continuing to drive when she could not see where she was going, or by a combination of these factors, was not an issue that a layperson needed expert opinion to decide. Thus, the trial court acted within its discretion in excluding the proffered testimony. In contrast, the officer's opinion about where the tractor-trailer was located before the collision and the degree to which the sun could have been in Brown's eyes was properly admitted by the trial court, because those conclusions were based on the officer's application of his expert knowledge to the physical evidence at the scene. See *Kennebeck v. Glover*, 294 Ga. App. 822, 823-825 (1) (670 SE2d 459) (2008) (no error in trial court allowing investigating officer to testify, in response to a hypothetical, that if defendant had been driving 20 miles over the speed limit when he hit plaintiff, he had been driving too fast for conditions).

2. Brown contends that the trial court erred in excluding evidence that Tucker had hired an expert but chose not to call him, asserting that the jury could have reasonably inferred from Tucker's failure to call the expert that the expert's report must have been unfavorable to Tucker. Again, we review this decision for abuse of discretion. *Whitlock,* 312 Ga. App. at 779 (1).

8

Tucker formally withdrew her designation of an expert witness and filed a motion in limine to exclude evidence that she had previously hired him or had failed to call him to testify. The trial court initially denied the motion, but reconsidered before Brown's expert accident reconstructionist testified. Brown sought to introduce evidence through her expert that Tucker had hired a different expert, and then "let [the jurors] draw whatever inferences they want to draw." After further consideration, the trial court ruled that the issue of who hired an expert had nothing to do with the issue before the jury, which was to determine the proximate cause or causes of the accident. Brown then stated her understanding that the court was ruling she "was not allowed to mention" Tucker's former expert, and the court clarified that Brown could not mention Tucker's "hiring of an earlier expert that [she] did not call." During the testimony of Brown's accident reconstruction expert, Brown did not ask the expert to identify all the material he had relied on to form his opinions, although he did testify outside the jury's presence that he had relied on material from Tucker's former expert to form his own opinion.

Brown argues that the trial court abused its discretion by not allowing her to introduce evidence that Tucker had hired an expert she did not call as a witness. She contends that under the authority of *Blige v. State*, 264 Ga. 166, 168 (2) (441 SE2d

9

752) (1994) (*Blige 4*) and *Blige v. State*, 263 Ga. 244, 245 (2) (430 SE2d 761) (1993), (*Blige 2*)[3] she should have been allowed to introduce foundation evidence that Tucker had hired an expert but did not call him, and to argue the negative inference arising from Tucker's failure to call that expert. These cases relied on *Sabel v. State*, 248 Ga. 10, 18 (6) (282 SE2d 61) (1981), in which the Supreme Court interpreted the reciprocal criminal discovery statute, former OCGA § 17-7-211 (b), as requiring an expert hired by a criminal defendant to reduce his opinions to a written report and give it to the State, even if the expert's conclusions were unfavorable and the defendant elected not to call him. That portion of *Sabel* was overruled three years later, however, when the Georgia Supreme Court noted that "the discovery rights granted to the [S]tate under *Sabel* [were] not reciprocal, but [were], in fact, greater than the statutory discovery rights granted to the defendant," because the State was not required to make its experts put their opinions into reports and give them to the defendant. *Rower v. State*, 264 Ga. 323, 325 (5) (443 SE2d 839) (1994). Citing due process concerns, the Supreme Court instead concluded that "with regard to scientific

---

[3]Mr. Blige appealed two separate convictions for similar crimes, both of which were heard by both appellate courts, for a total of four appellate opinions.

reports, the [S]tate is entitled to only those discovery rights specifically granted to the defendant by OCGA § 17-7-211." Id.

This court has a long line of condemnation cases addressing whether a party may place the opinions of an opposing party's former expert before the jury. We have held that such an expert is subject to subpoena regardless of who initially hired him, but that all questions relating to the expert's previous employment by the opposing party were irrelevant and inadmissible. *Logan v. Chatham County*, 113 Ga. Ap. 491, 492-493 (1), (2) (148 SE2d 471) (1966).

The Supreme Court in *Blige 4* held that, generally, the fact that an expert witness had been originally employed by the opposing party was not pertinent to the issues in the case. 264 Ga. at 167 (2). The State further argued that the identity of the expert's original employer was relevant to the witness's interest, citing former OCGA § 24-9-68, which provided that "[t]he state of a witness's feelings towards the parties and his relationship to them may always be proved for the consideration of the jury,"[4] but the court responded that the statute could not be considered in a vacuum. Id. Evidence relating to a witness's credibility is only relevant to attack or rehabilitate

_____

[4]The current case was tried after the effective date of the revised Code of Evidence.

11

the witness's credibility, and in *Blige 4*, the State had called the expert to testify for the State. Id. The State obviously had no interest in impeaching its own witness and the defendant had not attacked the witness's credibility, and therefore the witness's prior employment by the defendant was inadmissible.

Finally, in *Blige 4*, the State argued that the *Logan* rule, that a party cannot ask his own witness about having been previously employed by the opposing party, was inconsistent with *Sabel*'s holding that

> [i]f the defendant does not call the expert as a witness, the [S]tate may call the defendant's . . . [witness] without adding his or her name to the list of witnesses, or may argue to the jury that the defendant would have called the expert had the result of the testing been favorable to the defendant.

*Blige 4*, 264 Ga. at 168 (2), citing *Sabel*, 248 Ga. at 18 (6). The court in *Blige 4* concluded that these two holding were not inconsistent, because under *Sabel*, the State was required to elect between calling the witness or arguing the inference arising from the defendant's failure to call the witness, but not both, as the State wanted to do in that case. 264 Ga. at 168 (2).

In *Rower*, decided less than two months after *Blige 4*, after overruling *Sabel*'s requirement that a criminal defendant was required to make his expert witnesses

12

reduce their opinions to writing and share that with the State, the Supreme Court held, simply, "With regard to the [S]tate's right to call [the defendant's] expert witnesses as its own, or to argue the inference arising from [the defendant's] failure to call his own experts, see *Blige v. State*, 264 Ga. 166 (441 SE2d 752) (1994)." *Rower*, 264 Ga. at 325 (5).

According to *Blige 4*, 264 Ga. at 168 (2) and *Rower*, 264 Ga. at 325 (5), the State may argue in closing that the jury may draw a negative inference from a criminal defendant's failure to call as a witness an expert whom the defendant previously hired. We have found no further discussion of the issue in any cases from the Georgia Supreme Court, criminal or civil. But see *ABM Realty Co. v. Bd. of Regents of the Univ. Sys. of Ga.*, 296 Ga. App. 658, 662 (2) (675 SE2d 549) (2009) (no error in granting motion in limine to exclude property appraisal "with reference to the fact that the appraisal had been made on behalf of the moving party ... because a party is not bound by the rejected opinions of its expert witnesses.") See also *H. D. McCondichie Properties v. Ga. Dept. of Transp.*, 280 Ga. App. 197, 198 (1) (633 SE2d 558) (2006) ("The issue of who hired a particular expert had nothing to do with the questions being tried, and the trial court properly excluded this evidence at trial."); *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 84-85 (4) (532 SE2d 159)

13

(2000) (whether opposing counsel had hired expert in other cases was not proper rehabilitation evidence during voir dire on expert's qualifications); *Jones v. Scarborough*, 194 Ga. App. 468, 470-471 (3) (390 SE2d 674) (1990) (opposing party's former expert could have been deposed and questioned at trial about his observations of that party, although his original employment "was not pertinent and could not have been brought out").

Pretermitting whether the trial court erred in not permitting Brown to argue that Tucker had hired a particular expert that she did not call to testify on her behalf, we find no reversible error. Brown's accident reconstruction expert testified that, in his opinion, the tractor-trailer had been protruding about two feet into the road, and that Brown had not continued driving while sun-blind for as long as Tucker argued she had. Further, Brown argued in closing that Tucker had failed to rebut the opinions presented by Brown's accident reconstructionist as follows:

> We called an expert. They could have called an expert. They didn't not [sic] call an expert in this case to come in and say where those skid marks started, where the impact was. The only expert you've heard from from this side is [Tucker's lawyer]. And I suggest to you he's not an

14

expert. He's a lawyer. You only heard the science according to [Tucker's lawyer].[5]

The jury ended up apportioning a significant percentage of damages, 40 percent, to the tractor-trailer driver, and after reviewing the evidence, we conclude that the trial court's decision not to allow Brown to argue a negative inference arising from Tucker's failure to call her previously hired expert is not reversible error.

Brown also argues that her expert "should have been allowed to truthfully disclose the materials that he reviewed in forming his opinions," which included the deposition and investigative material of Tucker's expert. But the trial court did not rule that Brown was precluded from asking her expert about the evidence he relied on to form his opinions about the case. The trial court was very specific in holding only that Brown could not ask her own expert about the fact that Tucker had hired a different expert, and, as Tucker noted in her responsive brief, Brown waived this argument because she never tried to introduce evidence that her expert had relied on material supplied by Tucker's former expert.

---

[5]This argument did not violate the trial court's ruling on Tucker's motion in limine. See *Foskey v. William Bros. Trucking Co.*, 197 Ga. App. 715, 717 (2) (399 SE2d 484) (1990).

3. Brown asserts that the trial court erred in allowing Tucker to elicit evidence from the second passenger, Brown's daughter-in-law Brooke Roberson, "regarding a personal injury settlement," pointing out that evidence about liability insurance is inadmissible in tort cases. OCGA § 24-4-411 prohibits the admission of evidence that someone was or was not insured against liability in a civil damages case not involving a common carrier, unless the evidence is offered for a relevant purpose and the trial court "finds that the danger of unfair prejudice is substantially outweighed by the probative value of the evidence."

Here, the trial court considered the issue before trial began. It heard portions of Roberson's deposition, including her testimony that she had received a letter from Brown's insurance company saying "this is how much my medical bills [were], this is how much went to it, and this is how much I'll be getting. And since I had just had a baby that five hundred something was perfect." Roberson also testified in her deposition that she thought Tucker had sued the wrong party and that the truck driver was responsible for the wreck. Roberson's testimony regarding how long she was blinded by the sun before the collision varied from "a few minutes" to less than 15 seconds, to almost immediately ("[I]t was like, can't see, then boom, spinning. And then oh, look there's a truck there.").

16

The trial court found that whether Roberson had received money from Brown was relevant to her credibility, but also found that injecting the issue of insurance would be prejudicial to Brown. Before Roberson took the stand, the trial court again considered the issue and found that the value of allowing Tucker to ask limited questions about money she had received substantially outweighed the prejudice of having the jury possibly assume that Brown was insured.

Brown argues on appeal that the trial court abused its discretion in determining that the probative value of the evidence substantially outweighed the prejudice of allowing Tucker to introduce evidence of insurance.

No Georgia cases have yet addressed the application of OCGA § 24-4-411, but the proposition that a trial court must balance the prejudicial effect of liability insurance evidence with its probative value is not new. "The rule that the plaintiff be allowed the right of a thorough and sifting cross examination must be balanced against the rule that irrelevant matters of insurance coverage should be excluded from evidence. In the interest of justice, the matter of insurance which is not a germane issue, should be kept out." *Southeast Transport Corp. v. Hogan Livestock Co.*, 133 Ga. App. 825, 830 (3) (212 SE2d 638) (1975); see also *Morrison v. Kicklighter*, 329 Ga. App. 630, 634 (2) (d) (765 SE2d 774) (2014) (physical precedent only). On the

17

other hand, a party is entitled to explore any issues that may affect an opposing witness's credibility or show bias. *Presswood v. Walsh*, 271 Ga. App. 459, 461 (3) (610 SE2d 113) (2005); *Ayers v. Nichols*, 136 Ga. App. 532 (1) (221 SE2d 835) (1975).

In this case, the jury heard no direct evidence regarding Brown's liability insurance, only that Roberson had received money to settle any claims she had against Brown and that the truck driver had not paid her any money. The trial court allowed Tucker to ask Roberson only whether she had accepted money to release her claims against Brown (she had); whether the money she received had helped her take care of her new baby (it had); and whether she was given money by nonparty truck driver Patterson or anyone else to release her claims (she had not been). We find no abuse of discretion in the trial court's ruling, which balanced Tucker's interest in showing that Roberson could possibly be biased against Brown's interest in excluding evidence from which a jury could possibly assume she had insurance coverage, and found that the evidence of bias substantially outweighed the evidence of unfair prejudice.

While Brown also argues that any interest Roberson had in the trial's outcome was established by evidence of her relationship to Brown, and not by evidence that

18

she had previously received money from Brown to settle any claims against her, that argument goes to the weight of the evidence to show bias and not to its admissibility. See *Robert Stovall Family, L.P. v. Carroll County Water Auth.*, 255 Ga. App. 223, 224-225 (564 SE2d 763) (2002).

4. Brown argues that the trial court erred in charging the jury that the defendant had the burden of proving the negligence of the nonparty truck driver by a preponderance of the evidence. We review a trial court's jury instructions as a whole, de novo, for legal error. *Eagle Jets, LLC v. Atlanta Jet,* 321 Ga. App. 386, 398 (6) (740 SE2d 439) (2013).

In its preliminary charge, after instructing the jury that Tucker had the burden of proving her case by a preponderance of the evidence and defining what that meant, the trial court instructed the jury regarding Brown's burden of proof as to the nonparty truck driver as follows:

> Now, the defendant has filed an issue which is known as an affirmative defense to the claims of the plaintiff. Specifically, there is a nonparty person that they are claiming has some responsibility here. As to that defense, the defendant bears the burden of proof by a preponderance of the evidence.

In the trial court's final charge, after instructing the jury that Tucker had to prove her case by a preponderance of the evidence and explaining what that meant, the trial court continued:

> Defendant Tammy Brown has filed what is known as an affirmative defense to the Plaintiff Tisha Tucker's claim. Specifically, Defendant Tammy Brown alleges that Lee Patterson[,] who is not a party to this action[,] cause[d] or contributed to the damages claimed by Tisha Tucker. As to that defense, Defendant Tammy Brown bears the burden of proof by a preponderance of the evidence.

The trial court then gave further instructions regarding circumstantial and direct evidence, deposition testimony, expert witnesses, credibility, and impeachment, among others, before beginning the charges on proximate cause. The court then stopped, sent the jury out, and conferred with the parties. When the jury returned, the court charged them as follows:

> The case before you is one in which the Plaintiff must prove by a preponderance of the evidence that the negligence of the Defendant, if any, was a proximate cause of the injuries to the Plaintiff.
>
> Now, for you to consider the negligence of the nonparty Lee Patterson, the Defendant must prove by a preponderance of the evidence that the

negligence of Lee Patterson, if any, was a proximate cause of the injuries to the Plaintiff.

The court then defined proximate cause and ordinary negligence, noting that the ordinary negligence standard applied to both Brown and nonparty Patterson.

While Brown argues that she asked the court to charge the jury that she had the burden of showing a rational basis for apportioning fault to the nonparty, she cites to no written request to charge on the defendant's burden of proof regarding a nonparty. In her brief, Brown cites to a discussion between the court and parties before the court's preliminary charge to the jury, before opening statements, although the source of the language to which Brown objected is unclear, and also cites to the court's preliminary charge itself. She does not cite to or otherwise address the final charge on the issue, her objections to it, if any, or either party's written requests to charge, leading this court on a lengthy snipe hunt through the 35-volume record for the information. On this ground alone, we find no merit to Brown's enumeration. See *Jones, Martin, &c. v. Westrex Corp.*, 310 Ga. App. 192, 198 (3) (b) (712 SE2d 603) (2011) ("Without knowing the precise charge requested, we cannot review the trial court's denial of that request"; further, "absent a written request to charge or [substantial error harmful as a matter of law], we will not reverse for failure to give

21

an instruction."); *Sanders v. Bowen*, 196 Ga. App. 644, 646-647 (3) (396 SE2d 908) (1990) (absent record citation to charge and objection, issue is waived).

Absent a written request to charge, we review the propriety of the trial court's instructions to determine whether the court made a substantial error that was harmful as a matter of law. OCGA § 5-5-24 (c); *Pendarvis Constr. Corp. v. Cobb County-Marietta Water Auth.*, 239 Ga. App. 14, 16-17 (2) (520 SE2d 530) (1999) (charge shifting burden of proving value from condemnor to condemnee reversible error despite condemnee's failure to object). Upon review, we find no substantial error here.

"The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential." OCGA § 24-14-1. A defendant's claim that a nonparty is liable for all or some of the plaintiff's damages is an assertion of fact, the existence of which is essential to the defense. As an affirmative defense, the defendant bears the burden of proving her assertion of fact. See *Metropolitan Publishers Representatives v. Arnsdorff*, 153 Ga. App. 877, 878 (1) (267 SE2d 260) (1980) (affirmative defense that plaintiff had to remain employed to receive commissions was a factual issue on which the defendant bore the burden of proof). Generally, a defendant raising an affirmative

22

defense admits the essential facts of a plaintiff's complaint, "but [then] set[s] up other facts in justification or avoidance, or other special matters not merely elaborating or explaining a general denial, ... the burden of proving which by a preponderance of the evidence will rest on the defendants." *Williamson, Inman & Co. v. Thompson*, 53 Ga. App. 821, 827 (a) (187 SE 194) (1936).

A defendant need not necessarily concede the essential facts of the plaintiff's claim to raise a burden-shifting affirmative defense, however. A defendant may deny the essential facts asserted and also claim in the alternative that, if the plaintiff had been injured, the injury was due to causes other than the defendant's actions. For example, when a plaintiff sued the driver of a car for her son's wrongful death, the defendants denied liability but also contended that the child's death was proximately caused by him dashing into the street. *McCrackin v. McKinney*, 52 Ga. App. 519 (183 SE 831) (1936). This defense was more than a simply denial of negligence, causation, and damages, and once the plaintiff had made out her prima facie case, "the burden rested upon the defendants ... to show by a preponderance of the evidence, in order to sustain their plea, that the plaintiff's injuries were caused by her own negligence." Id. at 521. The trial court properly charged the jury that

> when the defendants deny an allegation made by the plaintiff, the burden rests upon the plaintiff to establish the truth of such allegations as may be denied by the defendant; but where the defendants set up an affirmative defense, the burden rests upon the defendants to establish the truth of such affirmative defense by a preponderance of evidence.

Id. at 520.

The affirmative defense that the jury should apportion fault against someone other than the defendant is no different analytically from the defense of contributory negligence. Once the plaintiff establishes her prima facie case, the defendant seeking to establish that someone else bears responsibility for the damages has the burden of proving that defense. See *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 679 (6) (278 SE2d 100) (1981).

Brown's only support for her proposition that the defendant need only show a rational basis for apportioning fault is *Levine v. Suntrust Robinson Humphrey*, 321 Ga. App. 268, 272-273 (1) (40 SE2d 672) (2013). But the issue decided in *Levine* was whether the trial court erred in granting summary judgment to the defendant on the plaintiff's count seeking damages for the total destruction of the business. The trial court granted this motion on the ground that the plaintiff had failed to establish how its damages should be apportioned between the defendant and the non-party

24

defendants with whom the plaintiff had settled. Id. at 271 (1). In reversing, this court held that, while the apportionment statute directs the jury to consider the negligence or fault of a nonparty that had settled with the plaintiff, OCGA § 51-12-33 (d) (1), at the summary judgment stage, the plaintiff need only establish that the defendant's "alleged actions were the proximate cause of an approximate amount of damage." Levine, 321 Ga. App. at 272 (1).

Further, charging the jury that the defendant must establish only a "rational basis" for finding a nonparty at fault would give the jury no guidance about how much evidence the defendant must produce to meet her burden of assigning fault to a non-party. The "rational basis" test is most often applied when analyzing whether a statute violates a constitutional right to substantive due process and equal protection. See, e.g., *State v. Nankervis*, 295 Ga. 406, 408 (1) (761 SE2d 1) (2014) ("Unless governmental action infringes upon a fundamental right or the complaining party is a member of a suspect class," the reviewing court "will uphold the statute if, under any conceivable set of facts, the classifications drawn in the statute bear a rational relationship to a legitimate end of government not prohibited by the Constitution.") This is, of course, not the context applicable to this case involving apportionment of fault between a defendant and a non-party defendant.

25

Additionally, the Georgia Supreme Court case to which *Levine* cites for its "rational basis" proposition addressed only the threshold question of whether a jury could even consider the "fault" of a criminal nonparty defendant in a premises liability case. *Couch v. Red Roof Inns*, 291 Ga. 359 (729 SE2d 378) (2012). The Supreme Court in *Couch* did not hold that the defendant's burden *at trial* was to show a rational basis for the apportionment of damages to a nonparty; it simply noted that the plaintiff's argument that a negligent landowner could show no rational basis for apportioning damages between itself and a criminal assailant was a factual issue, not a legal one. Id. at 366 (1). While *Levine* further states that "it is the defendant's burden to establish a rational basis for apportioning fault to a nonparty," to the extent that statement can be read to mean that the trial court should charge a jury that the defendant's burden of proof is the "rational basis" test, it is dicta. 321 Ga. App. at 272.

In sum, Brown's apportionment claim was an affirmative defense. She therefore had the burden of showing by a preponderance of the evidence that the nonparty tractor-trailer driver was negligent and that his negligence proximately caused all or some portion of damages to the plaintiff. Accordingly, the trial court committed no error in charging the jury to that effect.

26

5. Brown contends that the trial court erred in declining to give her request to charge the jury that "the issue of liability turns on the use of reasonable care under existing conditions rather than on compliance with government regulations," both initially and in response to a jury question asking whether it was illegal to park over the fog line onto the roadway. Brown elicited testimony from one of the responding deputies that no law prohibited parking where non-party Patterson had parked the tractor-trailer. Later, during its deliberation, the jury submitted a written question to the trial court asking, "Is it unlawful for a vehicle to at any time park over the fog line? And, if so, how far into the road [is] that[] legal?" The trial court responded, "No. It is not a violation of the criminal law or the traffic law to park over the fog line." Brown objected to the answer, arguing that the court should have recharged the jury on ordinary negligence and also should have given her request to charge that liability depended on the use of reasonable care under the conditions.

In support of his proposed charge, Brown cites *Sinclair Disposal Svc. v. Ochoa*, 265 Ga. App. 172 (593 SE2d 358) (2004), in which we affirmed the trial court's denial of a request to charge that a garbage truck driver could not be found negligent for parking halfway into the road because he had testified that his hazard warning lights had been on. That request to charge was improper because, while a

27

violation of Georgia's Uniform Rules of the Road "presents a prima facie case of negligence per se" absent a valid defense, the opposite is not true, because "[c]ompliance with the rules does not necessarily demonstrate that a defendant exercised ordinary care." Id. at 173.

Pretermitting whether Brown's requested charge was substantially covered by the court's charge and verdict form as a whole, any error in failing to give this charge was harmless. See *Fulton Nat. Bank v. Marshall*, 245 Ga. 745, 747 (262 SE2d 61) (1980). By apportioning 40 percent fault to the non-party defendant tractor-trailer driver, the jury clearly found that his "compliance with the rules" did not demonstrate that he exercised ordinary care.

6. Brown argues that the trial court erred in refusing to allow her to cross-examine Tucker about why her mother took pictures of her injured arm while she was in the hospital. Tucker affirmed in her deposition that one reason the pictures were taken was so she could use them later, if necessary, in a personal injury suit, and Brown argued that this evidence was relevant to show that "right then laying [sic] in that hospital bed, the Plaintiff in this case, confirming it in her own deposition, was already planning to file a lawsuit."

"The trial court has a wide latitude of discretion in controlling the scope of cross examination and in the absence of an abuse of that discretion its exercise will not be controlled." *Temple v. Temple*, 228 Ga. 73, 74 (184 SE2d 183) (1971). The trial court sustained Tucker's objections, finding that the pictures had previously been admitted without objection when Tucker's mother testified, and who took them or why they were taken was irrelevant. We find no abuse in the trial court's discretion in sustaining the objection.

7. Finally, Brown contends that the trial court erred when it answered a jury question "by reading that part of OCGA § 51-12-33 ... [that] states that the percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties." Brown reasons that reading this statute improperly indicated to the jury that Tucker would only recover those damages apportioned to Brown, asserting without citation to the record that the jurors "clearly adjusted their percentages of fault so as to ensure that Tucker received a certain amount of money." Our review of the record reveals no evidence to support that assertion and no error in the charge.

The jury asked a total of three questions related to apportionment. The first two questions, which came after the jury deliberated for almost an hour and a half, were

29

(1) "How would the percentage affect the amount of settlement?",[6] and (2) "On the percentages of fault, is this based on what the law is or what we, as a jury, feel that she was at fault?"

The trial court dismissed the jurors for lunch and consulted at length with the attorneys about how to answer those two questions. After the jury returned to the courtroom, the trial court first cautioned it not to speculate regarding the consequences of its verdict or make assumption about matters not in evidence. The trial court responded to the first question, asking how the percentages affected the amount of damages, as follows:

> Now, ladies and gentlemen, your job is, first of all, to set the total amount of damages that you feel like are appropriate for the damages incurred by Ms. Tisha Tucker. You are then, after that decision is made, you are then to go and determine how much fault, if any, was due to the defendant Brown and how much fault, if any, is due to the nonparty Patterson, Mr. Patterson. You are not to be concerned with anything else other than the latter questions. Do not reduce your total damages by any percentage of fault apportionment. The Court will take it from there.

---

[6]The parties agreed that the jury meant to ask how the percentage of fault would affect the amount of any damages awarded rather than the amount of any settlement.

In response to the jury's second question ("On the percentages of fault, is this based on what the law is or what we, as a jury, feel that she was at fault?"), the trial court responded, "Now, your job is to apply the law and my instructions to the facts as you, the jury, find them to be by a preponderance of the evidence that has been presented to you. And the consequences of your verdict are matters to be addressed by the Court and the parties after you have reached your verdict on those issues at hand."

After deliberating for another three hours and twenty minutes, the jury asked to look at its first question to the court and also asked, "What does ["]the percentage of fault["] mean?" The trial court answered as follows:

> Now, in assessing percentages of fault, you, the jury, shall consider the fault of all persons or entities who you feel contributed to the alleged injury or damages regardless of whether the person or entity was or could have been named as a party in the suit. [OCGA § 51-12-33 (c).] Now, *the assessment of percentages of fault of nonparties, which is Lee Patterson, should be used only in the determination of the percentage of fault of the named party*. [OCGA § 51-12-33 (f) (1).] For example, if you determine that both Tammy Brown and Lee Patterson are at fault, then you, the jury, must determine how much each is at fault. And then the total of the two percentage[s] that you determine must be 100 percent.

Reviewing the jury charges de novo and as a whole, we find no error in the trial court's response to the jury's question. The portion to which Brown objects is a direct quote from the statute and a correct statement of the law. The trial court had already charged the jury that it was "required to report on [its] verdict form the percentage of fault born[e] by the Defendant, if any, and any negligent nonparty, if any." The verdict form instructed the jury to write in the percentages of both Brown's and Patterson's fault and further said that the two percentages "must total 100%." The verdict form being part of the charge, *Cheddersingh v. State*, 290 Ga. 680, 682 (2) (724 SE2d 366) (2012), and considering the charges as a whole, we find no error.

*Case No. A16A0345*

Tucker's arguments in her cross-appeal all relate to her position that the trial court erred in failing to grant her motion for a directed verdict of liability solely against Brown. She contends that Brown's admission that she was blinded by the sun when she struck the tractor-trailer required the trial court to find as a matter of law that Brown's actions were the sole proximate cause of the collision; that the evidence showed the tractor-trailer driver stopped on the roadside due to a mechanical failure rather than voluntarily; and that Brown presented no evidence that the tractor-trailer driver breached a duty owed to Tucker that caused the collision.

32

7. Tucker first argues that the proper standard of review for her first two arguments is de novo rather than "any evidence," because no evidence controverts Brown's testimony that she could not see where she was going and hit the tractor-trailer, and no evidence indicates that the tractor-trailer driver had been negligent. She further contends that the "any evidence" standard applies in considering her argument that Brown presented no evidence of nonparty Patterson's fault.

Tucker confuses these two standards of review. "[O]n appeal from the denial of a motion for a directed verdict, … we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. However, we review questions of law de novo." (Punctuation and footnotes omitted.) *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 813 (720 SE2d 270) (2011).

Tucker is simply incorrect that "[r]egardless of any claimed negligence by anyone else, Brown's admissions required a finding as a matter of law that her actions were the intervening, sole proximate cause of the collision." Whether Brown or Patterson were negligent and if so, whether and to what degree their negligence proximately caused Tucker's damages was precisely the question before the jury, even if Brown admitted that she was blinded by the sun. As this court has previously

33

recognized, "a driver, however prudent he may be, must have time enough after being suddenly blinded [by the sun] to realize the situation with which he is confronted before he can be expected to stop his vehicle." *Brown v. Atlanta Gas Light*, 96 Ga. App. 771, 776 (1) (101 SE2d 603) (1957),

8. All three enumerations fail if Brown presented any evidence that nonparty Patterson was negligent and that his negligence was a proximate cause of Tucker's injuries. We thus consider whether any evidence supports the trial court's denial of Tucker's motion for a directed verdict.

Tucker's first witness was Brown, whom she called for cross-examination. After completing the examination, Tucker moved for a directed verdict that Brown was 100 percent liable for Tucker's damages. She argued that, even if there were evidence that the tractor-trailer driver was negligent, Brown's "action of continuing to drive when she could not see [was] the sole proximate cause of this collision." As Brown correctly noted in response at trial, this motion was premature, having been made before Brown had an opportunity to present any evidence at all. Tucker made a similar motion after Brown rested, which the trial court also denied.

On appeal, Tucker argues that "Brown's negligence was the sole proximate cause of the collision," and that the trial court therefore erred in denying her motion

for a directed verdict of 100 percent liability against Brown. She likens the evidence to that presented in *Wallace v. Yarbrough*, 155 Ga. App. 184 (270 SE2d 357) (1980) and *Brown*, 96 Ga. App. 771. Neither case involved apportionment, however, and neither establishes that the trial court erred in this case.

In *Wallace*, 155 Ga. App. at 185 (1), we held that the trial court properly directed a verdict to a third-party defendant driver who stopped suddenly when a car pulled in front of her, after which the defendant driver struck the third-party defendant driver from behind. But the actions of the third-party defendant in quickly stopping her car in response to another car that had suddenly pulled in front of her are not analogous to nonparty defendant Patterson's actions in leaving part of his rig protruding into the road, especially absent evidence showing why he did so. Neither Patterson nor the owner of the tractor-trailer rig whose driveway Patterson drove out of testified at trial.

Nor does *Brown*, 96 Ga. App. 771, establish error. In *Brown*, we held that the trial court properly sustained a general demurrer to a complaint alleging that the defendant Atlanta Gas Light failed to use ordinary care by negligently leaving loose dirt in the road while excavating for a gas line, which caused the plaintiff's decedent to skid and flip his dump truck. Id. at 775 (1). The complaint excused the decedent's

35

failure to observe the dirt before he hit it by averring both that he had been blinded by the sun and that his vision had been partially obscured, but in granting the general demurrer, we held that, construing the averments most strongly against the pleader, the complaint showed that the decedent continued to drive while he "could not see the way ahead." Id. at 776 (1).

Tucker argues that under the reasoning of *Brown*, 96 Ga. App. 771, the trial court was required to direct a verdict assigning sole proximate cause for the collision to Brown. But the analysis in *Brown* arose in the context of a pre-Civil Practice Act general demurrer, when a plaintiff had to plead a civil complaint with exacting particularity to survive. See generally *PMS Constr. Co. v. DeKalb County*, 243 Ga. 870, 871 (1) (257 SE2d 285) (1979) (under technical rules of pleading in force before adoption of Civil Practice Act, a complaint failing to allege the adoption on the minutes of a contract with county was subject to general demurrer, but that pleading requirement did not survive passage of CPA); *Summer-Minter & Assocs. v. Giordano*, 231 Ga. 601, 605 (203 SE2d 173) (1973) ("[A]dvent of the Civil Practice Act ... abolished causes of action wherein the case had to be set forth fully in the pleadings.").

36

Further, in this case, the evidence about how long and to what extent Brown was unable to see the road due to the setting sun consists of much more than a simple averment that she was blinded but continued to drive. Tucker asked Brown if she contended that the sun was in her eyes so brightly "at the point shown at Page 6 of Exhibit No. 2" (it is not clear from the record which point that is), and she replied, "The sun was in my eyes. But I was — I could see; but when I got on further around, I couldn't see." After Brown said she would have driven around the truck if she had seen it, Tucker asked, "So it's not the truck that caused the collision; it was your failure to see the truck?" Brown responded, "No," and further testified that if she had known there was something in the road she would have stopped and waited for the sun to go down.

When Tucker was asked if she had been bothered by the sun at any time before the collision, she responded, "Not at all." Roberson, Brown's other passenger, testified that the sun was not blinding when their pickup turned onto the road where the collision occurred. The sun did become blinding to her at some point before they hit the truck, but she was not sure how much time passed between then and the collision. In the last few seconds before the collision, Roberson said, she was "squinting her eyes" because the sun was in her face, and that affected her ability to

see the trailer. It was not blinding her the entire time they were on the road, and did not render her completely unable to see.

The evidence presented did not demand a finding that Brown was the sole proximate cause of the collision, and the trial court did not err in denying Tucker's motion for directed verdict to that effect.

9. Tucker's final two arguments, that nonparty Patterson was not negligent as a matter of law, are similarly unavailing, regardless of whether it was legal for him to stop and park on the side of the road. A legal act can still be negligent, and unlike the facts presented in *Brown v. Shiver*, 183 Ga. App. 207, 208 (1) (358 SE2d 862) (1987), the facts in this case do not establish that the Patterson had made reasonable efforts to start the stalled vehicle, that he had just retrieved it from a repair shop, that he had prior notice it was likely to stall, or that Brown could not have seen any warning indicators in time to avoid hitting the trailer. Brown's testimony that she did not see the trailer before she hit it does not demand the conclusion as a matter of law that she still would not have seen it if Patterson had activated the tractor-trailer's hazard lights or set up cones to warn oncoming traffic. One witness described the engine as making "spitter spatter" noises and going dead as Patterson drove it down the driveway. Another witness testified that the tractor engine was "sputtering like

38

something was wrong with the motor" as it pulled down the driveway toward the road, but Patterson kept driving until the rig was out of the driveway and the engine died.[7] The witness also testified that the tractor-trailer owner decided they should to move the tail end of the trailer out of the roadway so no one else would hit it. As mentioned previously, the evidence indicated that the trailer was sticking somewhere between a few inches to two feet into the road before the owner used his bulldozer to push the trailer end completely out of the road.

The evidence did not establish as a matter of law that Tucker was entitled to a directed verdict that Patterson was zero percent at fault and Brown was 100 percent at fault. Accordingly, the trial court did not err in denying Tucker's motion for a directed verdict.

*Judgment affirmed. Boggs and Rickman, JJ., concur.*

---

[7]Counsel indicated at oral argument that the tractor stopped because it had run out of gas, though that evidence was not presented to the jury.